MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2013 ME 112
Docket:      Cum-12-488
Argued:      September 12, 2013
Decided:     December 24, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GARY SLEEPER et al.

v.

DONALD R. LORING et al.

GORMAN, J.

[¶1]  This case involves a dispute over a parcel of land located on the northwest shore of Sebago Lake, referred to here as lot 40A.  The plaintiffs, Gary Sleeper, Ramona Sleeper, Richard Roy, and Holly Roy, all of whom own property near but not on Sebago Lake, appeal from a judgment of the Superior Court (Cumberland County, *Cole J.*) in favor of the defendants, Donald R. Loring, Marilyn P. Loring, Harry Greenlaw, and Ann Greenlaw, all of whom own shorefront property on the lake.  The court found that the defendants hold fee simple title to lot 40A and that an easement held by the plaintiffs over lot 40A does not grant them a right to maintain a dock.  Based on our de novo review of the summary judgment record, we conclude as a matter of law that a deed in the defendants' chains of title unambiguously excepts lot 40A from a prior conveyance

2

and that deeds in the plaintiffs' chains of title are ambiguous as to whether the dock is allowed. We vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶2] The following facts are established by the summary judgment record. Pursuant to a declaration of trust dated March 1, 1955, and recorded in the Cumberland County Registry of Deeds, Delmont R. Hawkes conveyed a piece of property in the Town of Sebago to D. Wilson Hawkes. This parcel, which included waterfront property on Sebago Lake, was to be held in trust by D. Wilson Hawkes for himself, Delmont R. Hawkes, and two others in order to allow the property to be subdivided and developed by Clifford L. Swan Co. into "summer and/or winter residential properties." In July of 1955, Swan recorded a copy of the plan for the North Sebago Shores subdivision in the Registry.

[¶3] Over time, the subdivision lots were sold to various persons, including the parties' predecessors in title. In 1970, D. Wilson Hawkes executed a deed to the Town of Sebago granting it fee simple title to the perimeter road (now known as the Anderson Road, but then known as the Hawkes Road) and to another road that connected the subdivision lots with state highway 114. The conveyance was made subject to the rights of third parties to use the roads.

[¶4] The trust remained in existence until 1972, when it conveyed its remaining property to D. Wilson Hawkes, Beryl Josephson, and F. Arnold

Josephson as co-partners of Hawkes Lumber Company. The Josephsons later filed a partition action against D. Wilson Hawkes relating to several parcels of land that they had held as tenants in common, including the subdivision. On December 24, 1976, as a result of a judgment in the partition action, attorneys Sumner T. Bernstein and Charlton S. Smith acquired title, in a fiduciary capacity, from Hawkes and the Josephsons to whatever remaining ownership interest the co-partners had in the subdivision.

[¶5] Shortly thereafter, in August of 1977, Bernstein and Smith executed a quitclaim deed to Bradley Benson. Benson's deed included a description of the parent parcel (*i.e.*, the North Sebago Shores subdivision parcel as it had existed in 1955) immediately followed by two paragraphs excepting certain land from the conveyance. Those paragraphs state:

> Excepting, however, from the above described premises all the Arabic numbered lots shown on Plan of North Sebago Shores . . . but not excepting those lots at the Southerly end of the premises . . . marked "reserved" on said Plan, and designated as lots numbered I, II, III, IV, V and VI thereon, which said six lots are hereby conveyed to the Grantee.

> Also excepting that parcel of land shown as a right of way on a plan entitled "Map of Right of Way (1) Hawkes Road of North Sebago Shores Development and (2) Right of Way from said Development to Route #114, Me. Highway" . . . dated May 14, 1970 . . . .

[¶6] Between 1994 and 1999, the parties to this action acquired fee simple title to five lots within the North Sebago Shores subdivision through separate

4

chains of title: the Greenlaws own lot 40, a parcel adjoining Sebago Lake; the Lorings own lot 41, also a lot adjoining the lake; the Sleepers own lot 71, a back lot fronting the perimeter road; and the Roys own lots 74 and 75, also back lots. Through their deeds, the plaintiffs, as owners of subdivision back lots, acquired an easement consisting of a right-of-way over lot 40A, a twenty-foot-wide strip of land situated between the defendants' lots. The plaintiffs' deeds both state, "[a]lso a right of way from the road to the shore of the lake over [lot 40A] as shown on said plan."



[¶7] In November of 2007, Benson executed a quitclaim deed to lot 40A to the defendants. The deed states that the conveyance was "[s]ubject to easements or rights of way to access Sebago Lake to the lot owners as shown on said Plan," referring to the subdivision plan that had been filed by Swan in 1955.

[¶8]  Well before Benson's 2007 conveyance of lot 40A to the defendants, the Sleepers had constructed a fifty-four-foot dock extending from lot 40A into Sebago Lake.  The Sleepers secured a retroactive permit for its construction from the Town of Sebago in 1999.  Eleven years later, in April of 2010, in response to a complaint by the defendants, the Town's code enforcement officer rescinded the permit and ordered the Sleepers to remove the dock.  The Sleepers appealed to the Town's zoning board, which upheld the code enforcement officer's decision.

[¶9]  In July of 2010, the plaintiffs filed suit, challenging, inter alia, the decision of the zoning board and the defendants' fee simple title to lot 40A, and seeking a declaratory judgment that they are entitled to build and maintain a dock at the waterfront of lot 40A.[1]  On cross motions for a partial summary judgment, the court found that (1) Benson's deed was ambiguous and a triable issue existed as to the fee simple title of lot 40A, and (2) the easement over lot 40A unambiguously did not grant the plaintiffs a right to construct and maintain the dock.  Accordingly, the court denied summary judgment on Count III of the plaintiffs' complaint and granted a summary judgment to the defendants on Count V of the plaintiffs' complaint.  A bench trial was held in July of 2012 on

---

[1]  Counts I and II of the complaint, which contained the Rule 80B claims against the Town of Sebago, were dismissed in May of 2011 because the Town rescinded its enforcement order.  The plaintiffs had also sought an injunction to prohibit the defendants from parking their vehicles on lot 40A, but did not appeal the court's summary judgment in favor of the defendants on that claim, found in Count IV of the complaint.

6

Count III, at which the court heard extrinsic evidence to determine the intent of the parties involved in the conveyance of property to Benson in 1977. After trial, the court found that Bernstein and Smith had intended to convey their entire interest in the parent parcel, including fee simple title to lot 40A, to Benson in 1977. The court entered a judgment that the defendants held the fee simple title to lot 40A subject to any "rights of passage" of the back lot owners, including the plaintiffs. The plaintiffs timely appealed.

## II. DISCUSSION

[¶10]    We review the entry of a summary judgment de novo. *Cox v. Commonwealth Land Title Ins. Co.*, 2013 ME 8, ¶ 8, 59 A.3d 1280. "The interpretation of a deed and the intent of the parties who created it, including whether the deed contains an ambiguity, are questions of law," which we also review de novo. *Lloyd v. Benson*, 2006 ME 129, ¶ 8, 910 A.2d 1048.

A.    Fee Simple Title to Lot 40A

[¶11]  We begin by reviewing the trial court's determination that the deed from Bernstein and Smith to Benson was ambiguous. The defendants contend that Benson's deed is plagued with ambiguity justifying the court's admission and consideration of extrinsic evidence to determine the parties' intent concerning the conveyance of property to Benson in 1977. Pointing to the two paragraphs excepting certain land from the conveyance of the parent parcel, they assert that

the deed is ambiguous as to (1) whether lot 40A is an "Arabic numbered lot" shown on the subdivision plan; and (2) whether lot 40A is part of "that parcel of land shown as a right of way" in a referenced 1970 plan. The defendants also argue that certain recitals following the deed description create further ambiguity as to the grantors' express intentions. We disagree.

1. Meaning of "Arabic Numbered Lot"

[¶12] It is well settled law that, in construing a deed, we first give words their general and ordinary meaning to determine if they create any ambiguity. *Wentworth v. Sebra*, 2003 ME 97, ¶ 10, 829 A.2d 520. Benson's deed refers to two distinct categories of subdivision lots—those designated by Arabic numbers and those designated by Roman numerals. The plain language of the deed reflects that those categories were to be treated differently: the grantors expressly conveyed the lots designated by Roman numerals to Benson, but excepted from the conveyance "all the Arabic numbered lots." Lot 40A is an Arabic numbered lot; that it also includes a letter from the Latin alphabet does not, as the defendants have asserted, transform its designation. No third category of lots is included in the language of the deed and there is nothing in the deed that indicates that the parties intended to create a third category. *See Perry v. Buswell,* 113 Me. 399, 401, 94 A. 483, 484 (1915) (stating that the "cardinal rule" for interpreting a deed is "the expressed intention of the parties").

2. Meaning of "That Parcel of Land Shown As a Right of Way"

[¶13]   The defendants next contend that Benson's deed is susceptible to more than one construction because it uses the singular form of the terms "parcel" and "right-of-way," while the referenced plan depicts multiple rights-of-way. The referenced plan indeed depicts many rights-of-way, but its title unambiguously identifies only two access roads shown on the plan and does so using the singular form of the term "right-of-way."[2]   It is firmly established that we must "look at the instrument as a whole" to construe the language of a deed.  *Windham Land Trust v. Jeffords*, 2009 ME 29, ¶ 24, 967 A.2d 690.  When a deed description references a plan, the entirety of the plan becomes a part of the deed.  *See Lincoln v. Wilder,* 29 Me. 169, 169 (1848).

[¶14]   Further, by using the singular form of the term "parcel," Benson's deed unambiguously refers to a single continuous parcel of land that is not separated by intervening land.[3]  The combination of the plan's title and the explicit quotation of that title in Benson's deed using the singular form of the term "parcel"

---

[2]  The exact title of the 1970 plan reads:

Map of Right of Way
1. Hawkes Rd of N. Sebago Shores Development.
And 2.  Right of Way Development To Route #114 Me. Hwy.

[3]  A "parcel" is defined as "a continuous tract or plot of land in one possession no part of which is separated from the rest by intervening land in other possession."  Webster's Third New International Dictionary 1640 (2002); *see also Silsby v. Belch,* 2008 ME 104, ¶ 12, 952 A.2d 218 (stating that a court may resort to a dictionary to help discern the common and ordinary meaning of language in a deed).

therefore unambiguously excludes from the conveyance one continuous parcel comprising the two roads specifically named in the title of the 1970 plan and a small lot that connects the two roads at their intersection—and nothing more. *See Browne v. Gorman*, 208 S.W. 385, 387 (Tex. Civ. App. 1918) ("nothing passes by a deed except what is described in it"); Walter G. Robillard & Lane J. Bouman, CLARK ON SURVEYING AND BOUNDARIES § 18.03 (LEXIS Law Publishing, 7th ed. 1997) (same).

3.    Meaning of the Additional Recitals

[¶15]  Finally, the defendants contend that certain recitals, which follow the deed description and the two "excepting" paragraphs, create additional ambiguity because they appear to convey to Benson the entirety of the title that Bernstein and Smith acquired in 1976 as a result of the partition judgment.  Those paragraphs state, in pertinent part, (1) "Meaning and intending to convey and hereby conveying solely those premises conveyed to the Grantors herein by Beryl H. Josephson, F. Arnold Josephson and D. Wilson Hawkes by deed dated December 24, 1976," and  (2) "[b]eing the same premises conveyed to the within Grantors by deed . . . dated December 24, 1976."  However, a reference in a deed to another deed will neither enlarge nor limit a grant when the property description is unambiguous.  *See Matteson v. Batchelder*, 2011 ME 134, ¶ 12, 32 A.3d 1059; *Smith v. Sweat*, 90 Me. 528, 533, 38 A. 554, 556 (1897) (a "definite and certain"

deed description "will control a general reference to another deed as the source of title"); *Abbott v. Pike*, 33 Me. 204, 207 (1851) ("Particular recitals, when used merely as descriptive of the grant, do not limit or restrict it, when the general language of the conveyance is intelligible and effective, without the recitals."). Here, because the references simply serve as a source of the grantor's title, *see id.*; *see also Brown v. Heard*, 85 Me. 294, 297, 27 A. 182, 183 (1893) (a "meaning and intending" clause "is merely a help to trace the title, but cannot enlarge the grant"), they do not cause ambiguity.

[¶16] When interpreting a deed whose terms are not ambiguous, we do not speculate about the grantors' actual or probable objectives; rather, we focus on what is expressed within the four corners of the deed. *See N. Sebago Shores, LLC, v. Mazzaglia*, 2007 ME 81, ¶ 13, 926 A.2d 728; *see also Perry*, 113 Me. at 401, 94 A. at 484 ("The cardinal rule for the interpretation of deeds and other written instruments is the expressed intention of the parties, gathered from all parts of the instrument, giving each word its due force, and read in the light of existing conditions and circumstances. It is the intention effectually expressed, not merely surmised. This rule controls all others."). Although Benson's deed is complex, it is not ambiguous, as all of its parts can coexist without raising questions about its meaning. Viewing the instrument as a whole, the expressed intention of the parties was to (1) convey to Benson the parent parcel, (2) except from that conveyance all

the Arabic numbered lots and the rights-of-way held in fee by the Town, and (3) further convey to Benson all access rights that the grantors possessed over the rights-of-way and roadways associated with the subdivision.[4] When we give each word in Benson's deed its due force, as we must, *see Perry,* 113 Me. at 401, 94 A. at 484, the plain language of the deed unambiguously excludes lot 40A from the conveyance to Benson. Fee simple title to lot 40A thus remained in the grantors, Bernstein and Smith, at the time of their property transfer to Benson in 1976.

B.     The Right-of-Way

[¶17]  In 2012, during the pendency of this action, other deeds purporting to transfer lot 40A were issued. The defendants obtained a fee simple title over lot 40A from Smith, and the plaintiffs obtained a fee simple title over lot 40A from Roberta J. Niehaus, the apparent sole heir of Bernstein's clients, Beryl H. Josephson and F. Arnold Josephson. Because the Josephsons had relinquished and

---

[4]  The final paragraph in Benson's deed description reads:

> Also hereby conveying to the Grantee, his heirs and assigns, any rights which the Grantor may have, in common with others entitled to the use of them, for the purpose of access, ingress and egress between the numbered lots shown on said Plan and the Lake, the Public Highway, Hawkes Road and any other streets, ways or rights of way shown on said plan of North Sebago Shores . . . or appurtenant to the premises hereby conveyed.

The plaintiffs correctly state that there would have been no reason for the grantors to convey to Benson a right of access over lot 40A if they had intended to grant him a fee simple interest to the lot. *See Dority v. Dunning*, 78 Me. 381, 387, 6 A. 6, 9 (1886) (an easement is "extinguished by unity of title and possession of the dominant and servient estates in the same person by the same right"). Any contention that this paragraph is the result of overly cautious drafting is not persuasive.

12

conveyed all rights in the parent parcel in 1976 to Bernstein and Smith pursuant to the partition judgment, and because the defendants' conveyance came from only one of the holders of title, the effect of these transfers is not entirely clear. There is no dispute, however, that the plaintiffs have a right-of-way over lot 40A "from the [peninsula] road to the shore of [Sebago] Lake." The sole issue concerning this grant is whether it includes the right to construct and maintain a dock.

[¶18] As with any other portion of a deed, "[t]he scope of a party's easement rights must be determined from the unambiguous language on the face of the deed." *Matteson*, 2011 ME 134, ¶ 16, 32 A.3d 1059 (quotation marks omitted). The defendants assert that the easement over lot 40A should be interpreted to unambiguously disallow the right to construct and maintain a dock for two reasons. First, they claim that, because the right-of-way extends "to the shore" rather than "to the water," it cannot as a matter of law include the right to install a dock. Second, the defendants note that the plaintiffs' deeds do not explicitly mention docking privileges. Relying on the legal definition of "right-of-way,"[5] the defendants suggest that the plain language of the easement should be read to limit

---

[5] A right-of-way is legally defined as a legal right to pass through property owned by another. *See* BLACK'S LAW DICTIONARY 1326 (7th ed. 1999).

its purpose to passing and re-passing over lot 40A.[6] These arguments are unavailing. In examining the plaintiffs' deeds, we conclude as a matter of law that, although there is no uncertainty as to *where* the right-of-way ends, there is uncertainty about *what* the right-of-way grants.

[¶19] The trial court correctly concluded that the phrase "to the shore," when used as it was here, unambiguously means that the right-of-way ends at the ordinary high-water mark of Sebago Lake.[7] *See generally,* Knud E. Hermansen & Donald R. Richards, *Maine Principles of Ownership Along Water Bodies*, 47 Me. L. Rev. 35, 54 (1995) ("[I]f the 'shore' or 'bank' is called for in a description without mention of the water or water's edge, it is presumed that the high water edge . . . is what is meant."). However, based on this finding, the court then determined that the language unambiguously allows access only to the shore and not to the water and, for that reason, concluded that the easement does not "extend as far as a dock [because] the dock would reach past the shore." Contrary

---

[6] In their cross motion for summary judgment, the defendants also asserted that, pursuant to our decision in *Rancourt v. Town of Glenburn*, 635 A.2d 964 (Me. 1993), the language of the plaintiffs' deeds unambiguously precluded a dock because the deed language granting the plaintiffs their right-of-way is precisely the same language found in the deeds concerning all of the other back lots. DSMF ¶ 47. The right-of-way at issue here is one shared by many back lot owners. Contrary to the defendants' contention, however, *Rancourt* does not stand for the proposition that, as a matter of law, an individual who shares a right-of-way providing access to a body of water with others may not install a dock. Rather, we determined in *Rancourt* that the plaintiff had failed to meet her burden of establishing sufficient legal interest in the right-of-way to entitle her to apply for a permit to place a dock there. *See id.* at 966.

[7] Strictly speaking, a lake does not have a "shore," *i.e.*, a region between high tide and low tide, although the use of this term in a deed description does not automatically render the deed ambiguous. *See Matteson v. Batchelder*, 2011 ME 134, ¶ 18, 32 A.3d 1059.

to the court's conclusion, although the phrase "to the shore" is not ambiguous when considering the geographic scope of the right-of-way here, the phrase is not necessarily unambiguous with regard to the purpose of the right-of-way. In *Badger v. Hill*, 404 A.2d 222 (Me. 1979), we discussed the "full enjoyment" of a right-of-way to the York River:

> The achieving of access to a river, however, is generally not the entire purpose for which a right of way providing such access is created. Also involved is why it was necessary, or desirable, to be able to reach the river. As to this aspect of purpose, the language of the deeds provides no answer. Thus, the language of the deeds may be unambiguous so far as it goes, but it does not go far enough in respects that are critical to the evaluation of the full scope, contemplated by the parties, of the use to be made of the right of way.

*Id*. at 225. As was the case in *Badger*, the plain meaning of the words in the plaintiffs' deeds does not make clear the purpose of the easement.

[¶20] When the purpose of an express easement is not clear, a court must "ascertain the objectively manifested intention of the parties to the original conveyance in light of circumstances in existence recently prior to the execution of the conveyance, as well as use of the easement and acts acquiesced to during the years shortly after the original grant." *Flaherty v. Muther,* 2011 ME 32, ¶ 55, 17 A.3d 640 (internal citations and quotation marks omitted). It may do so by considering extrinsic evidence. *Id*. Here, the plaintiffs presented a number of "undisputed" facts to demonstrate that the subdivision creator intended to permit

the construction and maintenance of a dock. In their responsive statement of material facts, the plaintiffs asserted that a dock had been constructed at the site in 1958 "for the use of the back lot owners," that the dock was still present in the early 1970s, that the shoreline in front of Lot 40A is rocky, and that the defendants typically access the water on either side of Lot 40A with their own docks. The defendants denied these assertions, and argued that, even if true, the asserted facts did not demonstrate that the original parties intended that the right-of-way included the right to build and maintain a dock. Because these assertions would require a court to choose between two competing versions of the facts, a summary judgment is precluded. *See Saltonstall v. Cumming*, 538 A.2d 289, 290 (Me. 1988).

[¶21] Additionally, if a party contends that a use is inconsistent with an easement's original purpose, as the defendants here assert, the trial court must evaluate whether, in the context of the uses contemplated by the original parties, the challenged use would overburden the servient estate. *See Flaherty*, 2011 ME 32, ¶ 74, 17 A.3d 640; *see also Perkins v. Perkins*, 158 Me. 345, 350, 184 A.2d 678, 681 (1962) (stating that, in the absence of a specific limit on the scope of an express easement, the grantees are entitled to a use which would reasonably serve the purpose of the grant); *Laux v. Harrington*, 2012 ME 18, ¶¶ 28-30, 38 A.3d 318 (discussing our overburdening analysis).

16

## C.  Conclusion

[¶22]  Because we conclude that (1) fee title to lot 40A unambiguously remained in the grantors at the time of the property transfer to Benson and (2) the language of the plaintiffs' deeds is ambiguous as to the purpose of the right-of-way, we must set aside the judgment and remand the case to the Superior Court for trial so that it may determine whether the plaintiffs have any right to build and maintain a dock.  Finally, because there are other back lot owners within the North Sebago Shores subdivision with an easement over lot 40A and there may be other fee owners of lot 40A who are not parties to these proceedings and whose interests may be prejudiced by the court's findings on remand, the court should determine whether additional necessary parties exist who must be joined to this action pursuant to M.R. Civ. P. 19(a),[8] and should so order.

The entry is:

> Judgment vacated.  Remanded for further proceedings consistent with this opinion.

---

[8]  M.R. Civ. P. 19(a) requires "joinder of all available persons who have an interest in the litigation so that any judgment will effectively and completely adjudicate the dispute."  *Ocwen Fed. Bank, FSB v. Gile*, 2001 ME 120, ¶ 14, 777 A.2d 275 (quotation marks omitted); *see also Muther v. Broad Cove Shore Ass'n*, 2009 ME 37, ¶ 9, 968 A.2d 539 ("Joinder is required in circumstances where the absence of unnamed parties would prevent a judgment from fully adjudicating the underlying dispute, expose those who are already parties to multiple or inconsistent obligations, or prejudice the interests of absent parties.").

**On the briefs:**

Robert S. Hark, Esq., Portland, for appellants Gary Sleeper, Ramona Sleeper, Richard Roy, and Holly Roy

William H. Dale, Esq., and Mark A. Bower, Esq., Jensen Baird Gardner & Henry, Portland, for appellees Donald R. Loring, Marilyn P. Loring, Harry Greenlaw, and Anne Greenlaw

**At oral argument:**

Robert S. Hark, Esq., for appellants Gary Sleeper, Ramona Sleeper, Richard Roy, and Holly Roy

William H. Dale, Esq., for appellees Donald R. Loring, Marilyn P. Loring, Harry Greenlaw, and Anne Greenlaw

Cumberland County Superior Court docket number AP-2010-20
FOR CLERK REFERENCE ONLY