STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
Docket No.: AP-10-20

GARY SLEEPER, ROMONA SLEEPER, )
RICHARD ROY and HOLLY ROY )
)
)
    Plaintiff, )
)
v. )
)
DONALD R. LORING, MARILYN P. )
LORING, HARRY GREENLAW and )
ANN GREENLAY )

    Defendant

SUPPLEMENTAL ORDER
AND FINAL JUDGEMENT

STATE OF MAINE
Cumberland ss Clerk's Office

MAR 0 8 2016

RECEIVED

Pursuant to the Law Court's remand, *Sleeper v Loring,* 2013 ME 112, 83 A.3d 769, and this Court's Order dated June 12, 2015, as testimonial hearing was held on September 21, 2015 to resolve the last remaining issue in this case: the dimensions of the dock allowed on the common right of way, Lot 40A. After a day-long hearing, at which seven witnesses testified, including Plaintiffs Gary and Ramona Sleeper and Defendants Donald Loring and Harry Greenlaw, and considering the further documentary evidence admitted, as well as the parties' prior stipulations, the Court determines the maximum dimensions of the dock to be four feet (4') in width and forty-two feet (42') in length (not to exceed 39' over the water and not to exceed 3' over land). The height of the dock may not be any higher than its current elevation.

The dimensions of the dock were not specified in the original grants of easement rights to the back lot owners to get from the perimeter road "to the shore of the Lake." See Plaintiffs' Ex. 1 (1959 deed to Plaintiff Sleepers' predecessor in title) and Plaintiffs' Exs. 2 and 3 (1961 and 1957 deeds to Plaintiff Roys' predecessors in title). Consequently the Court must look to the

objectively manifested intentions of the original grantor and grantees, the purpose of those original grants, the then-current relationship of the dominate and servient estate property owners and, here—lacking any truly definitive evidence from the time those original easements were granted—the conduct acquiesced to by the affected property owners shortly thereafter. See Sleeper v. Loring, 2013 ME 112, ¶ 20; Guild v. Hinman, 1197 ME 120, ¶ 9, 695 A.2d 1190.

The parties have stipulated the maximum width of the dock to be four feet (4'), which the Court finds to be reasonable and likely to have been within the contemplation of the original grantor and grantees at the time (and remains reasonable to date) to accommodate the range of uses that such a dock would likely provide related to accessing the Lake.

Also, implicit in the four foot dock width limitation is the obligation to keep the dock "picked up" on a daily basis, i.e., remove all personal belongings on a daily basis, as failing to do so would frustrate use of the right of way dock by the many other back lot owners beyond the Plaintiffs.

The parties have agreed the dock may be no higher in elevation that it is now.

However, the Court still must determine the maximum length of the dock. No testimony was presented as to the length of the original dock constructed by John Lestage, an original back lot owner, in the late 1950s. See Plaintiffs' Ex. 23 (photo of Mr. Lestage building the dock in 1957 or 1958). Similarly, no written or photographic evidence was admitted that documented the dock's length; however, both testimonial and documentary evidence was admitted that the dock as it existed in the mid-1960s was long enough to accommodate "reasonable dock uses" as defined above. Trial testimony of Mr. Lestage's daughters, Linda Write and Carol Brewster; see Plaintiff's Ex. 24 (photo of Lestage's daughters on adjacent Marston dock); Defendants' Exs. 105 and 107 (photos of right of way in late 1970s) and Defendants' Ex. 21 (1998 photo showing

dock same approximate length as adjacent 26' dock then on Defendant Greenlaws' property) and Defendants' Ex. 106 (sales brochure for the Lorings' property from 1999 with photo in lower right-hand corner showing right of way dock same approximate length as 23' dock then on Defendant Lorings' property). In short, based on the trial testimony of Mrs. Wright and Mrs. Brewster and the photographic evidence, there was sufficient evidence to demonstrate that the length of the dock as used by the Lestages from the late 1950s to 1970s (when the Lestages finally sold their back lot) and the depth of the water (even with rocks along the shoreline) were adequate to accommodate such "reasonable dock uses." Further there is a photo from May 28, 1999 showing the dock to be no longer than 42' (39' over the water at that date and 3' over land); Defendants' Ex. 54 shows Plaintiff Gary Sleeper in the water on May 28, 1999 in the process of adding a 12' section with obviously brand new decking to the existing dock. See also Defendants' Ex. 106 (sales brochure photo of dock no longer than 23' over the water).

Taken as a whole, this evidence demonstrates that the maximum length of the dock reasonably within the intention of the original easement grants is forty-two feet (42') total (maximum 39' over the water and maximum 3' over the land, the latter to include any pedestrian-only ramp from the right of way to the dock). And, with the parties having agreed to a four-foot width and a height not to exceed the dock's current elevation, the right of way dock may not exceed these dimensions. No dinghies may be left on the dock other than as temporary tie-ups to the water.

This access Order, together with this Court's judgment dated June 12, 2015, constitutes the final judgment in this matter.

So ORDERED.

The clerk is directed to incorporate this Order into the docket by reference.

Date: _____March 8, 2016_____

_____
Justice, Maine Superior Court

STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss                          CIVIL ACTION
                                        CUMSC-AP-10-20

GARY SLEEPER, RAMONA
SLEEPER, RICHARD ROY and
HOLLY ROY,

         Plaintiffs

v.                                      JUDGMENT

DONALD R. LORING, MARILYN
P. LORING, HARRY GREENLAW,
and ANN GREENLAW,

         Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUN 12 2015

RECEIVED

Following the Law Court's decision in this case, *Sleeper v. Loring*, 2013 ME

112, 83 A.3d 769, on remand the court must answer three questions: (1) who is

the fee simple owner of Lot 40A? (2) do plaintiffs have the right to build and

maintain a dock on Lot 40A under the terms of the easement? (3) are plaintiffs

overburdening their easement?[1]

1. Fee Simple Title

In June 1955, the North Sebago Shores Subdivision (the Subdivision) was

developed for D. Wilson Hawkes. (Stipulation ¶ 1.) Wilson Hawkes held title to

the entire subdivision property in trust for the benefit of himself, Delmont R.

Hawkes, Beryl Josephson, and Arnold Josephson. (Stipulation ¶ 2.) Delmont

Hawkes conveyed his interest to the other three beneficiaries of the trust in 1970.

(Stipulation ¶ 5.) The trust existed until August 24, 1972 when all of the trust

property, including Lot 40A, was conveyed to Wilson Hawkes, Beryl Josephson,

---

1 The court has already determined that no other parties need to be joined under M.R.
Civ. P. 19(a). *See* 9/29/14 Order.

and Arnold Josephson, as co-partners of Hawkes Lumber Company. (Stipulation ¶ 6.)

In 1976, Beryl and Arnold Josephson brought a partition action for several parcels of land they held as tenants in common with Wilson Hawkes, including the subdivision property. (Stipulation ¶ 7.) On December 23, 1976 the Superior Court entered a judgment ("Partition Judgment") which required the parties to convey the "Caggiano Lot," which included Lot 40A, to their attorneys Charlton Smith and Sumner Bernstein. (Defs.' Ex. 3.) The attorneys were then required to list the property for sale and divide the proceeds equally between Wilson Hawkes, Beryl Josephson, and Arnold Josephson. (Defs.' Ex. 3.) The Josephsons and Wilson Hawkes executed quitclaim deeds conveying the Caggiano lot to Attorney Smith and Attorney Bernstein. (Stipulation ¶ 8.) The two attorneys sold the property on August 31, 1977 and delivered a quitclaim deed to Bradley Benson, purporting to convey the Caggiano Lot. (Stipulation ¶ 9.)

On appeal, the Law Court interpreted the quitclaim deed delivered to Bradley Benson from the attorneys. *Sleeper*, 2013 ME 112, ¶ 11, 83 A.3d 769. The court held that the deed was unambiguous and did not convey title to Lot 40A. *Id.* ¶ 16. Thus, Smith and Bernstein retained title to Lot 40A. *Id.* Attorney Bernstein died in 2002. (Stipulation ¶ 11.) On June 11, 2012, Attorney Smith executed a quitclaim deed to the Lorings and the Greenlaws, conveying all of his interest in Lot 40A to the Lorings and the Greenlaws. (Stipulation ¶ 15.) The parties dispute whether this deed conveyed the entire interest that Smith and Bernstein acquired in 1976 pursuant to the Partition Judgment.

Defendants argue that the Partition Judgment created a trust and that Attorneys Bernstein and Smith were obligated under the judgment to acquire

2

and sell all of the property constituting the Caggiano lot, which includes Lot 40A. They argue that all elements of a trust under Maine law are present, specifically (1) trustees (Bernstein and Smith), (2) beneficiaries (Hawkes and the Josephsons), and (3) trust property (the Caggiano Lot). *See* 18-B M.R.S. § 401 (2014).

While Smith and Bernstein purported to convey the Caggiano Lot to Bradley Benson, the deed to Benson did not actually convey Lot 40A. Thus, Smith and Bernstein continued to hold title to Lot 40A as cotrustees. Under 18-B M.R.S. § 704(1), a vacancy in trusteeship occurs if one of the trustees dies. "If one or more cotrustees remain in office, a vacancy in a trusteeship need not be filled." 18-B M.R.S. § 704(2). When Bernstein died in 2002, there was a vacancy in the trusteeship, but because Smith remained a trustee, that vacancy did not need to be filled. Accordingly, defendants argue, when Smith quitclaimed his interest in Lot 40A to the defendants, he conveyed the entirety of the interest Smith and Bernstein acquired as trustees.

Plaintiffs rely on the Statute of Frauds, 33 M.R.S. § 851, which provides, "[t]here can be no trust concerning lands, except trusts arising or resulting by implication of law, unless created or declared by some writing signed by the party or his attorney." In this case, the deed conveying the Caggiano Lot to Bernstein and Smith is signed by the parties.[2] That deed explicitly refers to the 1976 Partition Judgment, which establishes the intent to create a trust. The deed and the judgment together satisfy the writing requirement. *See Blake v. Collins*, 69 Me. 156, 157 (1879) ("Any writing, however informal, from which the existence of

---

2 A trust may also have arisen by implication of law and therefore would not be subject to the writing requirement.

3

a trust in the estate and the terms of it can be sufficiently understood, whether it was intended by the signer as such or not, is sufficient.").

The court agrees with defendants that the Partition Judgment effectively created a trust. This interpretation is consistent with the equitable powers of the Superior Court to appoint a trustee for the sale of property in a partition action. *See* 33 M.R.S. § 153(1); 4 M.R.S. § 152(5)(L); *Boyle v. Boyle*, 1999 ME 128, ¶ 14, 736 A.2d 273 ("Section 153 grants authority to the Superior Court . . . to appoint a trustee to sell real estate, on the petition of any person who has possessory interest in the real estate, even though the real estate is subject to a contingent remainder interest."). It is irrelevant that the court did not use the terms "trustee" and "trust" when it ordered the parties to convey their property to Bernstein and Smith. *See* Restatement (Second) of Trusts § 23 cmt. a (1959) ("[N]o particular form of words or conduct is necessary for the manifestation of intention to create a trust."). All elements necessary to create a trust in this case were satisfied.

When Smith conveyed Lot 40A to the Greenlaws and the Lorings in 2012, he was simply acting according to the 1976 Partition Judgment. That judgment ordered the attorneys to sell the entirety of the Caggiano Lot—they were not allowed to retain any interest in that property. Smith testified that the two attorneys did not intend to retain any portion of the Caggiano Lot, and in fact had received full consideration for the entirety of the property. Smith was therefore obligated by the judgment to convey any remaining interest in Lot 40A to the defendants as the successors-in-interest to Bradley Benson. (Stipulation ¶ 12.) When Smith quit-claimed his interest in 2012, the Greenlaws and the Lorings acquired fee simple title to Lot 40A.

4

## 2. Scope of the Easement

The Greenlaws own Lot 40 on the Subdivision Plan and the Lorings own Lot 41. (Defs.' Exs. 8-9.) Each family has 40 feet of frontage on Sebago Lake. (*Id.*) The Sleepers own Lot 71 and the Roys own Lots 74 and 75. (Pls.' Ex. 5.) The plaintiffs' lots are all back lots with no lake frontage. (*See* Stipulation ¶ 1.) Plaintiffs' deeds include a right of way, which states: "Also a right of way from the road to the shore of the lake over Lot 40-A as shown on said plan." (Pl.'s Exs. 1-3.) The Law Court concluded that this language is ambiguous as to the purpose of the right of way. *Sleeper*, 2013 ME 112, ¶ 22, 83 A.3d 769. In remanding to this court, the Law Court set forth the test for this court to apply: "when the purpose of an express easement is not clear, a court must ascertain the objectively manifested intention of the parties to the original conveyance in light of circumstances in existence recently prior to the execution of the conveyance, as well as use of the easement and acts acquiesced to during the years shortly after the original grant." *Id.* ¶ 20.

The court held a bench trial on November 3-5, 2014. Defendants' witnesses testified that Hawkes intended to construct a boat ramp at the end of Lot 40A. There is no evidence, however, that he ever took any steps to construct a boat ramp. While this may have been Hawkes's original plan, the court concludes that the scope of the right of way over Lot 40A is not limited to the construction of a boat ramp to the exclusion of a dock. The evidence supports this conclusion for several reasons.

First, the court notes that the shore at Lot 40A is rocky, making a boat ramp impractical. In addition, the right of way across the lot was granted only to back lot owners. If Hawkes intended to create a boat ramp at Lot 40A, then he

5

likely would have granted access to both front and back lot owners. The fact that he granted the right of way only to back lot owners suggests that it was intended to provide them general access to the lake, which in that area, is best accomplished by using a dock.

Historical use of Lot 40A confirms that the scope of the easement includes the right to build and maintain a dock. Based on the testimony at trial, the court finds that John Lestage constructed a dock at the end of Lot 40A in either 1957 or 1958. This is the dock pictured in Plaintiffs' Exhibit 23. This dock was located in approximately the same location as plaintiffs' dock is now. There is no evidence that Hawkes, the developer, ever objected to the dock, and the dock remained in the same location until the 1970s, after the Lestages sold their property. In fact, Hawkes continued to convey deeds that included express easements over Lot 40A until 1961, after the dock was built.

Defendants' witness Jon Hebert testified that the dock pictured in Plaintiff's Exhibit 23 was actually built on the neighboring Marston property. Hebert believed, however, that the Marstons had 55 or 60 feet of lake frontage, when in fact they only had 40 feet. The court does not credit his testimony regarding the location of the Lestage dock.

Based on the circumstances at Lot 40A around the time Hawkes conveyed the easements, the court concludes that plaintiffs' dock is within the scope of the easements. The plaintiffs are permitted to keep and maintain a dock at its current location at the end of Lot 40A.

3. Overburdening Analysis

To determine whether plaintiffs are overburdening the easement, the court "evaluate[s] whether it is reasonable to conclude that a particular use was

6

within the contemplation of the parties to the conveyance and, in that context, whether the contested use made of the servient estate by the dominant estate exceeds the rights granted to the user." *Flaherty v. Muther*, 2011 ME 32, ¶ 74, 17 A.3d 640.

Although plaintiffs are entitled to build and maintain a dock at the end of Lot 40A, use of the easement is limited to accessing the lake. Plaintiffs may temporarily tie a boat up to the dock because one of the purposes of accessing the lake is for boating. Plaintiffs' easement does not allow them to set up a table and chairs; store property on the lot, including sections of the dock when not in use; or conduct any other activity on Lot 40A that is not related to accessing the lake.

One issue that has not been adequately addressed by the parties is the permitted width and length of the dock. Although there was some testimony on this issue, it is unclear to the court how large the dock at Lot 40A is compared with the Lestage dock and compared with other docks in the area. In the interest of resolving this case completely and finally, the court will schedule a hearing and take additional testimony, if necessary, to determine the permitted width and length of plaintiffs' dock.

## CONCLUSION

Defendants own Lot 40A pursuant to the 2007 deed from Bradley Benson and 2012 corrective deed from Attorney Smith subject to express easements in plaintiffs' deeds. Plaintiffs' easement rights across Lot 40A include the right to build and maintain a dock of a size to be determined by the court in a future hearing. The easement rights do not include the right to set up a table and chairs, store property on the lot, or engage in any activity unrelated to accessing the lake.

7

The entry is:

Fee simple title to Lot 40A of the Subdivision lies with Defendants Donald Loring, Marilyn Loring, Harry Greenlaw and Ann Greenlaw by virtue of the deed from Charlton Smith dated June 11, 2012 and recorded in the Cumberland County Registry of Deeds in Book 29658, Page 347, subject to the rights of others to pass and re-pass on the same;

The deed language that provides Plaintiffs with a right of way from the road to the shore of Sebago Lake over Lot 40A includes the right to build and maintain a dock at the end of Lot 40A;

The deed language does not give Plaintiffs the right to do any of the following on Lot 40A: place chairs or a picnic table, store any personal property, or use the lot for any activity other than accessing Sebago Lake.

This matter shall be scheduled for a conference and a hearing to take additional testimony if necessary on the issue of the permitted width and length of the dock.

Date: _____ June 12, 2015 _____

Roland A. Cole
Justice, Superior Court

8

Date Filed ___07-06-10___ ___Cumberland___ Docket No. ___AP-10-20___
                              County

Action ___80B Appeal___

GARY SLEEPER                          ~~TOWN OF SEBAGO~~
RAMONA SLEEPER                        DONALD R LORING
RICHARD ROY                          MARILYN P LORING
HOLLY ROY                            HARRY GREENLAQ
                                     ANN GREENLAW

                              vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ROBERT S. HARK ESQ.<br>75 PEARL STREET<br>PORTLAND, ME 04101 | BRIAN WILLING ESQ (TOWN OF SEBAGO)<br>William H Dale Esq (OBO Defendants<br>Greenlaw and Loring) |

Date of
Entry

2010

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: AP-10-020

GARY SLEEPER,
RAMONA SLEEPER,
RICHARD ROY, and
HOLLY ROY

Plaintiffs

v.                                                                    ORDER

DONALD R. LORING,
MARILYN P. LORING,
HARRY GREENLAW, and
ANN GREELAW

Defendants.

There are three motions before the court: the plaintiffs' motion for summary judgment as to Count III; the defendants' cross-motion for summary judgment as to Counts IV and V; and the defendants' motion to strike the plaintiffs' demand for a jury trial.

## BACKGROUND

The lot at issue in this litigation is referred to as "40A – RT W. 20" (lot 40A) in the Plan of North Sebago Shores. (S.M.F. ¶ 1.) The North Sebago Shores subdivision was originally developed for D. Wilson Hawkes in June 1955. (S.M.F. ¶ 7.) At that time Hawkes held the title to the relevant property in trust. (S.M.F. ¶ 8.) In 1957 and 1961 Hawkes conveyed lots 74 and 75 from the subdivision to individual landowners. (S.M.F. ¶¶ 9, 12.) These landowners became the predecessors-in-title of plaintiffs Richard and Holly Roy. (*Id.*)

In 1958, Hawkes conveyed lot 71 to Everett Littlefield, who is the predecessor-in-title of plaintiffs Gary and Ramona Sleeper. (S.M.F. ¶ 10.) The Littlefield deed includes

1

"a right of way from the road to the shore of the lake over Lot 40-A as shown on said plan." (S.M.F. ¶ 11.) Additionally, in 1970, Hawkes conveyed Hawkes Road[1] and the right-of-way from Hawkes Road to Route 114 (as shown on Plan Book 115, Page 47) to the Town of Sebago. (S.M.F. ¶ 13.)

In 1976, following a series of legal proceedings, attorneys Sumner Bernstein and Charlton Smith, in their fiduciary capacities, obtained certain properties including Hawkes ownership of the North Sebago Shores subdivision. (S.M.F. ¶¶ 16–19.) In 1977 Bernstein and Smith conveyed the property to Bradley Benson with a deed containing the following language, which is at the center of this case:

> Also excepting that parcel of land shown as a right of way on a plan entitled "Map of Right of Way (1) Hawkes Road of North Sebago Shores Development and (2) Right of Way from said Development to Route #114, Me. Highway", prepared by Alan Hawkes and Leslie P. Marston, dated May 14, 1970, and recorded in Cumberland County Registry of Deeds in Plan Book 115, Page 47.

(S.M.F. ¶ 4.)

The defendants obtained title to property in the subdivision pursuant to a quitclaim deed that was conveyed by Benson on November 19, 2007. (S.M.F. ¶ 2.) Based on this conveyance, the defendants claim that have fee simple title to lot 40A.

On January 11, 1994, the Sleepers obtained title to lot 71 pursuant to a municipal quitclaim deed. (S.M.F. ¶ 40.) The Town of Sebago had acquired the property from Littlefield. (S.M.F. ¶ 41.) In 1998, the Sleepers built a boat dock at the end of lot 40A and both the Sleepers and Roys have used this dock. (S.M.F. ¶¶ 42, 46.) It is unclear if anyone else uses the dock. All of the back-lot owners in the subdivision have an easement to use lot 40A to pass from "the road to the shore of the lake." (S.M.F. ¶ 47.)

Plaintiffs filed a four-count complaint on July 6, 2010. Counts I and II asserted 80B claims against the Town of Sebago, but they were dismissed on May 16, 2011.

---

[1] Hawkes Road is now known as Anderson Road. (S.M.F. ¶ 14.)

2

Count III challenges defendants' ownership of the fee simple title of lot 40A. Count IV requests an injunction to prohibit the defendants from parking their vehicles on the right-of-way. Count V was added on August 30, 2011, and in it the plaintiffs request a declaratory judgment that they are entitled to build and maintain a dock on the right-of-way.

## SUMMARY JUDGMENT

### 1. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A motion for summary judgment must be supported by citations to record evidence of a quality that would be admissible at trial. *Levine*, 2001 ME 77, ¶ 6, 770 A.2d 653 (citing M.R. Civ. P. 56(e)). An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178). The evidence is viewed "in the light most favorable to the nonmoving party." *Driscoll v. Mains*, 2005 ME 52, ¶ 6, 870 A.2d 124 (quoting *Tucci v. City of Biddeford*, 2005 ME 7, ¶ 9, 864 A.2d 185).

### 2. Count III

The plaintiffs argue that "there is no issue of material fact with respect to the issue of whether the deed from Sumner Bernstein and Chadbourne [sic] Smith to Bradley Benson conveyed any fee interest in the parcel at issue in this action, to wit, '40A- RT W.20.'" (Mot. Summ. J. 1.) As a result, they move for partial summary judgment on Count III. The process for interpreting a deed is well established by the Law Court.

3

> The construction of a deed is a question of law that we review de novo. A court construing the language of a deed . . . must first attempt to construe the language . . . by looking only within the 'four corners' of the instrument. In evaluating the language of a deed, courts should give effect to the common or everyday meanings of the words in the instrument. If the deed is unambiguous, the court must construe the deed without considering extrinsic evidence; if the deed is ambiguous, however, the court may admit extrinsic evidence of the parties' intent.

*N. Sebago Shores, LLC v. Mazzaglia*, 2007 ME 81, ¶ 13, 926 A.2d 728 (internal citations and quotation marks omitted); *see also Badger v. Hill*, 404 A.2d 222, 225 (Me. 1979) (allowing use of extrinsic circumstances only when consideration of plain meaning does not suffice). "The objective intent of the parties is a question of fact." *Flaherty v. Muther*, 2011 ME 32, ¶ 55, 17 A.3d 640 (discussing express easements).

The plaintiffs argue that the deed is not ambiguous because "[t]he Hawkes plan describes nothing other than a parcel of land that consists of contiguous rights-of-way, all of which are *contiguous* and thus constitute *a single parcel of land*; and all of which are *labeled as rights-of-way*." (Pls' Reply 3 (emphasis in original).) Since the plaintiffs believe the deed is not ambiguous they based their deed interpretation on the content within the 'four corners' of the instrument. For example, the plaintiffs argue that the deed "expressly grants to Benson a right-of-way for access 'between the numbered lots shown on the Plan and the Lake . . .'"[2] (Pls' Reply 3.) They assert that these numbered lots include lot 40A and "the effect of such a conveyance would be to merge the *dominant* and *servient* estates, and the right-of-way would be a nullity." (Pls' Reply 3 (emphasis in original).)

---

[2] The Bernstein deed reads:
> Also hereby conveying to the Grantee, his heirs and assigns, any rights which the Grantors may have, in common with others entitled to the use of them, for the purpose of access, ingress and egress between the numbered lots shown on said Plan and the Lake, the Public Highway, Hawkes Road and any other streets, ways or rights of way shown on said plan of North Sebago Shores, recorded in said Registry of Deeds in Plan Book 44, Page 10, or appurtenant to the premises hereby conveyed.

4

Upon review of the deed and the referenced pages from the plan book, the deed is ambiguous. Lot 40A boarders another right-of-way, but the plaintiffs' description of the right-of-ways is misleading. There are several connected parcels of land that are labeled as rights-of-way on Plan Book 115, Page 47. The Hawkes road, which is a right-of-way, has four rights-of-way shooting off of it connecting it to the Lake. Lot 40A is one of those parcels. Although the parcels are all connected in some way they do not create a single flowing parcel. One could drive along them without entering a non-right-of-way, but not without backtracking. As a result, the deed is ambiguous.

The defendants bring in several arguments, based on extrinsic evidence, that the Bernstein deed conveyed lot 40A to Benson. For example, the defendants argue that Benson believed he had title since he separately conveyed the individual right-of-ways, including lot 40A, as right-of-ways. Additionally, Bernstein and Smith did not separately convey lot 40A, but they did separately convey the larger roads to the city. The intent of the deed is not clear from the disputed facts provided by the parties. As a result, whether the defendants have a fee interest in lot 40A is a question of fact for a factfinder.

### 3. Count IV

In Count IV the plaintiffs allege that the defendants are parking on lot 40A "and generally occupying said lot as though the lot was a personal driveway for their cottages." (Compl. ¶ 37.) As a result, the plaintiffs ask the court for injunction relief stopping this interference. In their briefs and at the hearing the parties agreed that this issue has been resolved, but the plaintiffs continue to ask for a declaration in their favor. (*See* S.M.F. ¶¶ 36-39.) Since the court does not have a legal or factual reason to issue an injunction regarding the parties parking on the right-of-way it grants summary judgment in favor of the defendant.

5

### 4. Count V

The plaintiffs' amended complaint included Count V, which asks the court to "enter its declaratory judgment that the Plaintiffs are entitled to build and maintain their existing dock at the waterfront at the end of said right-of-way between the properties of Defendants." (Amend. Compl. Count V.) The parties disagree regarding whether the deed conveying the plaintiffs' their right-of-way access to lot 40A is ambiguous. The plaintiffs argue that the deed is ambiguous and the court should consider extrinsic evidence, but the defendants argue that the language is not ambiguous.

The Sleepers obtained lot 71 through a municipal deed from the Town of Sebago. The property description of this deed noted, "such lot or parcel of land more fully described in the conveyance of D. Wilson Hawkes to Everett H. Littlefield." (Sleep Dep. Ex. 24.) The deed in the Hawkes-Littlefield conveyance[3] contained the language, "Also a right of way from the road to the shore of the lake over Lot 40-A as shown on said plan." (Cole Dep. ex. E.) The Roys obtained lots 74 and 75 through a warranty deed from the Morneaus. This deed contained the language, "Also a right of way from the road to the shore of the Lake, over Lot 40A as shown on said Plan." (Sleeper Dep. Ex. 57.) Considering the plain language, the lot 40A right-of-way provides landowners access to the shore of the Lake, not to the body of the Lake.

Plaintiffs argue that this case is similar to *Badger v. Hill*, 404 A.2d 222 (Me. 1979), where, in a dispute over the construction of a dock, the Law Court found the deed conveying a right-of-way "to the York River" ambiguous. *Id.* at 225. Similarly, another dock was at issue in *Rancourt v. Town of Glenburn*, 635 A.2d 964 (Me. 1993), where the

---

[3] Even when the deed is unambiguous the court may reference documents that are referred to in the deed. *See Medeika v. Watts*, 2008 ME 163, ¶ 7 n.3, 957 A.2d 980 (permitting reference to a survey for interpreting an unambiguous deed).

6

"deed granted a right of 'ingress and egress' to Pushaw Lake." *Id.* at 965. There the court also found that the deed was ambiguous because it did not "indicate whether 'ingress and egress' includes the right to place a dock at the end of the right of way." *Id.*

This case is distinguishable from those two examples. Here, the deed clearly states that the right-of-way goes to the "shore"[4] of the Lake, instead of simply going to the Lake. This additional distinction removes any ambiguity and indicates that the easement does not extend as far as a dock, since the dock would reach past the shore. Therefore, summary judgment is granted for the defendant regarding Count V.

## JURY TRIAL

For civil cases, juries are allowed in trials for legal claims, but not equitable ones. *Me. Const. art. I.* § 20 ("In all civil suits . . . the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced."); *DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me. 1995). "The determination whether a claim is legal or equitable depends on the 'basic nature of the issue presented, including the relief sought.'" *DesMarais*, 664 A.2d at 844 (quoting *Cyr v. Cote*, 396 A.2d 1013, 1016 (Me. 1979)). Equitable claims require "creative, injunctive, or unique action by the court." *Thermos Co. v. Spence*, 1999 ME 129, ¶ 18, 735 A.2d 484. As the surviving claim in this action, Count III, which asks for a declaratory judgment regarding property rights, must assert a legal claim in order to permit a jury trial.

Declaratory judgment is an equitable remedy, but it is not always based in equity. *See Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980). In support for a jury trial,

---

[4] "Shore" is defined as "the land bordering a usu. large body of water." *Webster's 3rd New International Dictionary* 2102 (2002). Black's Law Dictionary defines "shore" as "land lying between the lines of high- and low-water mark; lands bordering on the shores of navigable waters below the line of ordinary high water; (2) land adjacent to a body of water regardless of whether it is below or above the ordinary high- or low-water mark." *Black's Law Dictionary* 1505 (9th ed. 2009).

the plaintiffs argue that their claims are essentially legal actions to quiet title, as outlined in 14 M.R.S.A. §§ 6651–6654. (Opp. Strike Jury 4.) The plaintiffs, however, are not requesting quiet title; instead they are asserting that the defendants do not have fee simple ownership of the property. (*See generally* Compl.)

Here, in Count III, the plaintiffs are not requesting damages for themselves; instead they are asking the court to declare that another party does not have a certain right to property. This remedy is more akin to an equitable claim than a legal one.[5] As a result, the plaintiffs do not have a right to a jury trial.

**The entry is:**

The Plaintiffs' Motion for Summary Judgment regarding Count III is

**DENIED;**

the Defendants' Motion for Summary Judgment regarding Counts IV and

V is **GRANTED;**

the Defendants' Motion to Strike the Plaintiffs' Demand for a Jury Trial is

**GRANTED.**

DATE: May 15, 2012

Roland A. Cole
Justice, Superior Court

---

[5] As the defendants assert, this case is comparable to *Thompson v. Pendleton*, 1997 ME 127, 697 A.2d 56, where the Law Court pointed out that a jury trial was not proper at the trial level to determine that the width of a easement was "unknown." *Id.* at ¶¶ 1, 10. This case is not directly on point, however, because the Law Court specifically references the reformation and equitable servitude claims, which are not before the court in this action.

Date Filed __07-06-10__     Cumberland     Docket No. ___AP-10-20___

<span style="margin-left:3em">County</span>

Action ___80B Appeal___

GARY SLEEPER                ~~TOWN OF SEBAGO~~
RAMONA SLEEPER          DONALD R LORING
RICHARD ROY               MARILYN P LORING
HOLLY ROY                 HARRY GREENLAQ
                            ANN GREENLAW

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ROBERT S. HARK ESQ.<br>75 PEARL STREET<br>PORTLAND, ME 04101 | BRIAN WILLING ESQ (TOWN OF SEBAGO)<br>William H Dale Esq (OBO Defendants<br>Greenlaw and Loring) |

Date of
Entry