MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 77
Docket:      Yor-19-408
Submitted
  On Briefs:  May 12, 2020
Decided:     May 28, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

INGRID DOYON, TRUSTEE OF THE OSCAR OLSON JR. TRUST

v.

JOSEPH J. FANTINI et al.

MEAD, J.

[¶1]  Joseph J. Fantini; Ann J. Fantini; John J. Dubois, Trustee of the John J. Dubois Revocable Trust; and Maureen A. Dubois, Trustee of the Maureen A. Dubois Revocable Trust (collectively, the Fantinis) appeal from a declaratory judgment entered in the Superior Court (York County, *O'Neil, J.*) in favor of Ingrid Doyon, Trustee of the Oscar Olson Jr. Trust.  In its declaratory judgment, the trial court concluded that (1) the language of the restrictive covenant governing use of a lot owned by Doyon is ambiguous and (2) the ambiguities should be resolved in Doyon's favor to allow for the construction of structures other than a garage.  The Fantinis contend that the court erred in its interpretation of the deed.  We agree and vacate the judgment.

## I. BACKGROUND

[¶2] In 1912, Charles A. Donovan acquired a thirty-acre parcel of land in York. In 1913, Donovan drafted a subdivision plan (recorded in 1915) for "Nubble Point," apportioning the property into ninety-three lots and later conveying all or a portion of approximately thirty lots as depicted on the plan. For nearly all of the lots conveyed, the deeds established specific development restrictions. In 1936, he drafted a revised subdivision plan (recorded in 1937) for Nubble Point and later conveyed all or a portion of approximately sixteen lots as depicted on the revised plan, subject to development restrictions.

[¶3] In a 1941 plan, Donovan again revised the subdivision, enlarging Lot 71 and creating Lot 72, the vacant lot at issue in this appeal. The same year, Donovan conveyed Lots 3, 5, and 72 to Elwood and Marion Hennessy in a single deed (the "Hennessy Deed") that is the deed at issue here and that contained the following language restricting development of the three lots:

> The foregoing described and conveyed lots or parcels of land are conveyed subject to various restrictions, all of which shall run with the land, to wit:
>
> (a) No building of any kind whatever shall be erected upon said Lot Number Five (5).
>
> (b) No building, other than a new, one-family house shall be erected on said Lot Number Three (3). Said house shall cost not less than fifteen hundred dollars ($1,500.00). It shall not be nearer

Lot Number Two (2), nor "Marycliff Avenue",[1] than twenty (20) feet in either case. A private garage may be erected, however, upon said lot.

(c) A private garage, for use with said Lot Number Three (3), may be erected upon said Lot Number Seventy-Two (72). It shall not be nearer "Marycliff Avenue" than forty (40) feet, and not nearer Lot Seventy-One (71) than twenty (20) feet, and it shall not be used for dwelling purposes of any kind.

[¶4]  In two 1979 deeds, the Hennessys conveyed Lots 3, 5, and 72 to Oscar Olson Jr.[2] Doyon, Olson's daughter, acquired Lots 3, 5, and 72 as trustee of her father's trust through a quitclaim deed executed shortly before her father's death in 2012. In 2013, Doyon conveyed Lots 3 and 5 together to individuals unrelated to this action, but she retained her interest in Lot 72, marking the first time since the creation of Lots 3, 5, and 72 that the three lots were not in common ownership.

[¶5]  In 2014, Doyon initiated a declaratory judgment action in the Superior Court seeking a determination that the restrictive covenant burdening Lot 72 permitted her to construct a single-family home and garage on the property. *See* 14 M.R.S. § 5954 (2020). In 2015, the parties filed cross motions for summary judgment, and the court concluded, inter alia, that summary

---

[1]  The name of "Marycliff Avenue" has since been changed to "Nubble Road."

[2]  More specifically, one deed conveyed Lot 72 to Oscar Olson Jr. and Arthur Perkins as joint tenants and the other deed conveyed Lots 3 and 5 solely to Oscar Olson Jr.

4

judgment was precluded because the restrictive covenant is ambiguous. The court held a bench trial on June 13, 2019, and issued a judgment in favor of Doyon on September 9, 2019. The Fantinis, who own lots neighboring Doyon's, appealed.

## II. DISCUSSION

[¶6] The parties contest the interpretation of the restrictive covenant contained in the Hennessy Deed as it pertains to Lot 72.[3] The parties dispute whether the language of the Hennessy Deed limits permissible construction on Lot 72 to a non-dwelling garage subject to setback restrictions, as the Fantinis contend, or whether it permits such a garage and/or other construction, such as a single-family home and accessory garage, as the trial court concluded in favor of Doyon.

[¶7] According to well-established principles of interpretation,

[c]onstruction of a deed, including a restrictive covenant, is a question of law that we review de novo. The language must be

---

[3] Doyon also challenges the enforceability of the restriction, advancing two theories. First, she contends that the Fantinis lack standing to enforce the restrictions because their properties are not appurtenant to Lot 72. We agree with the trial court's conclusion that the Fantinis have standing to oppose Doyon's interpretation of the restriction because their title descends from land that Donovan retained at the time of the conveyances made pursuant to the Hennessy Deed. *See Herrick v. Marshall*, 66 Me. 435, 439 (1877).

Second, Doyon contends that it would be inequitable to enforce the restriction because (1) changed circumstances in the neighborhood make maintaining the restriction unjust and (2) the restriction constitutes an unreasonable restraint on alienation. We are unpersuaded by these equitable arguments and do not address them further.

> given its ordinary meaning, and if there is no ambiguity the plain meaning controls. If the language is ambiguous, then extrinsic evidence may be consulted to ascertain the grantor's intent. Language is deemed ambiguous when it is reasonably susceptible of different interpretations.

*River Dale Ass'n v. Bloss*, 2006 ME 86, ¶ 6, 901 A.2d 809 (citations omitted) (quotation marks omitted). Although the focal point of our interpretation is restriction c of the Hennessy Deed, the portion pertaining to Lot 72, "we must look at the instrument as a whole to construe the language of a deed." *Sleeper v. Loring*, 2013 ME 112, ¶ 13, 83 A.3d 769 (quotation marks omitted); *see Kinney v. Cent. Me. Power Co.*, 403 A.2d 346, 349 (Me. 1979). In addition, where a deed references a plan, as the Hennessy Deed references Donovan's subdivision plans, "the entirety of the plan becomes a part of the deed." *Sleeper*, 2013 ME 112, ¶ 13, 83 A.3d 769.

[¶8]  The trial court concluded that restriction c is ambiguous and determined that no extrinsic evidence spoke directly to the intent of the parties to the Hennessy Deed. The court then applied the rule of construction dictating that ambiguities should be resolved in favor of the interpretation that least restricts the free use of property. *See Matteson v. Batchelder*, 2011 ME 134, ¶ 16, 32 A.3d 1059 ("In the absence of extrinsic evidence, the intent of the parties should be ascertained by resort to the rules of construction of

6

deeds . . . ." (quotation marks omitted)); *Boehner v. Briggs*, 528 A.2d 451, 453 (Me. 1987) (stating the rule of construction that ambiguities are "resolved in favor of less restrictive uses of the property"). Because we conclude that the plain language of the deed is not reasonably susceptible of multiple interpretations, and is therefore not ambiguous, we do not address extrinsic evidence or rules of construction. *See River Dale Ass'n*, 2006 ME 86, ¶ 6, 901 A.2d 809.

[¶9] Although the trial court's constrained interpretation of restriction c resulted in ambiguity, a reading of the covenant that properly considers Lot 72's restrictions in the context of the entire deed leads to the clear understanding that Donovan intended Lot 72 to be used only for the purpose of constructing a garage, subject to setback requirements, for use in conjunction with Lot 3. Although the language of restriction c does not mirror the form used in restrictions a and b—which expressly prohibit structures using the opening language of "No building . . . shall . . . ."—its meaning is nonetheless clear. On its face, the Hennessy Deed evinces Donovan's intent to convey Lots 3, 5, and 72 as a unit, with Lot 3 functioning as the centerpiece. The deed dictates that Lot 5, a small waterfront parcel neighboring the waterfront Lot 3, is to remain vacant,

and that a garage constructed on Lot 72, which is situated across the street from Lot 3, is to be "for use with . . . Lot Number Three (3)."

[¶10]   Restriction b permits Lot 3 to be used for construction of a single-family house and a garage.  The trial court posited that "the fact that the deed allows for the construction of a private garage on either Lot 3 *or* Lot 72 undermines [the Fantinis'] interpretation because the building of a garage on Lot 3 leaves Lot 72 without a conceivable use."  However, the option to construct a garage on Lot 3 does not render Lot 72 useless.  Even if the grantees opted to construct a garage on Lot 3, they reasonably may have decided to construct a second garage for use with Lot 3 on Lot 72.  The plain language of the deed does not, however, give the grantees the option to construct other types of structures on Lot 72 if they decided not to build a garage there.

[¶11]   In addition, Doyon's interpretation—that Donovan imposed specific limitations for any future garage on Lot 72, but nevertheless left the door open, without any specifications whatsoever, for the construction of any other kind of structure to be built on the lot—is not a reasonable one.  It is hardly conceivable that Donovan, who conveyed nearly all of the lots in the subdivision subject to deeded restrictions, prohibited a combination garage/dwelling unit but allowed carte blanche for any other imaginable

structure, including dwelling units, on Lot 72. In permitting a dwelling on Lot 3 in the subdivision, restriction b carefully sets forth a minimum price ($1,500), setback specifications, and a limitation that the house be single-family in nature. Restriction c includes no similar conditions that one would expect had Donovan intended to permit a dwelling on Lot 72. Further, as the trial court acknowledged, if Donovan had intended to allow for dwellings on Lot 72—and only included garage setback specifications out of a driving concern to regulate garage aesthetics—such an interpretation fails to explain why he did not include similar specifications regulating a potential garage on Lot 3. In sum, the Hennessy Deed unambiguously limits the construction that can take place on Lot 72 to a garage to be used with Lot 3, subject to the setback specifications described in restriction c.

The entry is:

> Judgment vacated. Remanded for entry of a judgment consistent with this decision.

Christopher E. Pazar, Esq., and William J. Kennedy, Esq., Drummond & Drummond, LLP, Portland, for appellants Joseph J. Fantini; Ann J. Fantini; John J. Dubois, Trustee of the John J. Dubois Revocable Trust; and Maureen A. Dubois, Trustee of the Maureen A. Dubois Revocable Trust

Roy T. Pierce, Esq., Jensen Baird Gardner & Henry, Portland, for appellee Ingrid Doyon, trustee of the Oscar Olson, Jr. Trust

York County Superior Court docket number RE-2014-78
FOR CLERK REFERENCE ONLY