STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT CIVIL
ACTION DOCKET NO.
~~CV-20-472~~ RE-18-013 è

JOANNE STINSON *et. al.*

v.                                                    JUDGMENT

GREGORY CUSHMAN *et al*

The parties appeared before the court for final hearing in this matter on August 16 and 17, 2023. The hearing was on the second phase of the trial to determine the scope of the easement issue as well as whether the Defendants' use of the easement, specifically the installation and use of a dock, overburdened the rights of the easement holders. During the first phase, the court determined that the Defendants had rights to use the strip of land identified as Lot 33A, in common with the other lot owners, as a right-of-way to access Crescent Lake.

FINDINGS OF FACT

The court adopts both the Stipulated Facts supplied at the initial hearing, the facts found by the court in its Partial Judgment dated January 10, 2022, and the facts in the Further Findings of Fact-Phase I.

In addition, after the hearing on this matter, the court adopts the following additional facts.

1. è The Crescent Lake Development Association, the common grantor, intended that Lot 33A provide equal access to Crescent Lake to each of the owners in the subdivision.

2. è The scope of each owner's use of the right of way is necessarily limited to those uses which would allow the other owners equal access. There is no other evidence of the developer's intent. è

3. There was no evidence of the actual use of Lot 33A at or near the time of the conveyance. è

1

REC'D CUMB CLERK OF
SEP 14 '22 PM7:04

4. Prior to the construction of the dock, the Plaintiffs observed little use of the right of way.

5. Nancy Cobb, the other abutting neighbor, recalls that one or two prior back lot owners had installed a dock, but did not keep a boat there. Generally, use of Lot 33A was limited.

6. Plaintiffs purchased Lots 32 and 33 in 2011. Lot 33 abuts Lot 33A. They have since conveyed those lots to another party.

7. The Defendants purchased their property in 2014.

8. In 2017, the Plaintiffs purchased three back lots, 135-137, with an express right to use Lot 33A in their deed.

9. The Defendants obtained a permit from the Town to install a 120 square foot dock at the end of Lot 33 A. The dock measured 20 feet long by 6 feet wide.

10. Although the Defendants the time suggested they were going to build larger dock, the dock they ultimately built met the permit's requirements.

11. The dock itself consists of two 6 x 10 sections. In addition, there is a ramp connecting the dock to the shoreline.

12. The shoreline is mostly vegetated with a narrow passage through the vegetation at the ramp's location.

13. Lot 33A is 25 feet wide.

14. There is a bluff 3 to 4 feet high at the shoreline.

15. A dock makes it easier to access the lake. With a dock, anyone wishing to swim, launch a kayak, or engage in a similar activity could do so from the dock. Without a dock, these activities would require negotiating one's way down the bluff.

2

16. The abutting landowners, including the Plaintiffs, signed a form giving permission for the Defendants to construct the dock. It was conditioned on the right of any member of the Crescent Lake Terrace Association to use the dock. The Plaintiffs also understood that this permission was revocable.

17. Although the parties likely did not know it at the time, membership of that particular road association is irrelevant to the right to use Lot 33A.

18. Installation of the dock alone, if all easement holders have equal access, does not overly burden the easement, is within the scope of the easement, and does not interfere with the use of the easement by others.

19. The Plaintiffs became concerned both that the Defendants' actual use of the dock overburdened the easement and that other owners of back lots showed interest in using the right of way. One back lot owner advertised the lot for sale and included use of the right of way as an amenity.

20. Plaintiff Joanne Stinson researched the deeds and found a distinction between lots with deeds that specifically identified the easement and those lots, like the Cushmans, that merely incorporated the plan depicting Lot 33A as a right of way. Her good faith interpretation was that the Cushmans could not use the right of way.

21. At some point, the Plaintiffs, the other abutting neighbors and the Cushmans had a discussion regarding the Cushmans' use of the lot. As a result of the meeting, the Cushmans reduced their use of the lot and the dock. They no longer left personal items on the dock or held social events on the dock.

22. In 2017, the Plaintiffs' revoked their permission to the Cushmans to install the dock.

23. The Cushmans have continued to install the dock each summer.

3

24. The Cushmans did continue to dock their boat on the dock most of the time. Another back lot owner also docked his boat with "permission" of the Cushmans.

25. The presence of two boats on the dock make it impractical to dock a third boat and burdens use of the dock by others. The presence of one boat limits access by other lot owners.

26. Leaving personal property on the dock would burden use of the dock by others.

27. On at least one occasion, the Cushmans docked their boat elsewhere to accommodate a boat belonging to another dock user.

28. At least two of the other A lot rights of way have a dock at the end of them.

29. There is insufficient evidence regarding of the nature of that use to make evidence of the use of the other A lots probative to the issues in this case.

30. Any use of the dock by an easement owner that includes occupancy of any portion of the dock, other than transient use while the owner is present, is outside the scope of the easement and places a burden on other easement holders.

CONCLUSIONS OF LAW

The scope of an easement must be determined from the unambiguous language of the deed. *Wardwell v. Duggins,* 2016 ME 55, ¶ 10. If the permitted uses are not apparent from the face of the deed, the court may consider extrinsic evidence to determine the intent of the parties at the time of the easement's creation. *Id.* The court must determine whether a use was reasonably foreseeable at the time of the creation of the easement. *Id.,* ¶ 12.

First, one owner's installation of a private dock is beyond the scope of that owner's easement rights. Given the size of the easement and the number of potential lot owners benefitted by the easement, it is not possible that the original intent was that each owner have the

4

right to install a private dock. *Compare, Rancourt v. Town of Glenburn,* 635 A.2d 964, 965-66 (Me. 1993). Therefore, the Cushmans' installation of a private dock with use limited to any one owner or subset of owners exceeds the scope of their easement rights.

Second, the court considers whether installation of a dock at Lot 33A fully open to all lot owners exceeds the scope of the Cushmans' easement rights. There is nothing about the plan and deeds conveying the easement that bars the installation of a dock fully open to all easement holders at the foot of Lot 33A. Furthermore, the evidence suggests that given the bluff at the shore and the vegetation, a dock open to all easement holders would improve access to the lake for all lot owners. Access to the lake is the clear purpose of the right of way. *See Badger,* 404 A.2d at 226 (right of way designed for lake access included right to build a dock). Therefore, the court does not find that installation of a dock which may be used equally by all easement holders is beyond the scope of the easement.

The Cushmans cite *Badger v. Hill,* 404 A.2d 222 (Me. 1979), for the proposition that use of the dock is in the lake, not on the easement. Therefore, they argue that of the dock on the water could not overburden the easement. In *Badger,* the plaintiffs enjoyed a right of way over defendant's property. The defendant built a dock that could interfere with the plaintiff's ability to build a dock. The defendant's dock was not on the plaintiff's right of way, but was entirely on defendant's adjacent land. The court held that defendant's dock did not overburden plaintiff easement rights because it was in the waterway outside of the easement. *Id.* at 227.

Clearly, *Badger* does not mean that placement of a dock cannot overburden an easement because it is placed in public waters. *Rancourt,* 635 A.2d 964, 965-66; *Chase v. Eastman,* 563 A.2d 1099, 1103 (Me. 1989). Furthermore, *Badger* is distinguishable. There, the dock was not placed on the right of way. It was on the defendant's adjacent property. Here, the dock was

5

placed on the right of way. Given the limited opening at the water front, a dock over which all the lot owners do not have free and full access effectively blocks, at least in part, their ability to access the waterfront.

The evidence is that the Cushmans at times engaged in uses, such as social events or storing items on the dock, that suggested they considered the dock to be a private dock. The evidence also suggested that after controversy arose, the Cushmans moderated that conduct and scaled back some of their previous uses of the dock. They continued to keep a boat at the dock but, at least on one occasion, moved the boat when someone else asserted a right to dock their boat there. The court finds that, at times, the Cushmans have treated the dock as a private dock and that those uses both exceeded the scope of the easement and interfered with the rights of the Plaintiffs to use the easements.

Regardless of the Cushmans past use, the parties' remaining requests for relief ask the court only to declare the rights of the parties.[1] Therefore, the court's decision ultimately does not address past conduct and instead looks forward. In the Complaint, Count II, the Plaintiffs ask that the court enter a declaration that the Cushman's easement rights do not allow the Cushmans to install a dock at the end of Lot 33A and that installation of a dock overburdens the right they do have. Complaint, ¶¶ 34, 35. Paragraph b of the Counterclaim's prayer for relief asks a declaration that the Cushmans be permitted all "reasonable uses" of the right of way. The court addresses both of the requests for a declaratory judgment as follows.

---

[1] The Plaintiffs requested injunctive relief in their Complaint. They made a perfunctory request for injunctive relief in their closing brief. They did not, however, make any effort to demonstrate that they had met the elements of a permanent injunction. *Windham Land Trust v. Jeffords*, 2009 ME 29, ¶ 41 ("The party seeking a permanent injunction, as with a preliminary injunction, must show that: (1) the party would suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm that granting injunctive relief would inflict on the party opposing the injunction; (3) the public interest will not be adversely affected by granting the injunction; and (4) the plaintiff succeeds on the merits."). Therefore, court declines to issue an order granting injunctive relief.

6

The court declares that the Cushmans' easement rights do not include the right to attach a *private* dock to Lot 33A. Given the narrow width of the easement and the further limitations to access as a result of vegetation along the shore, the installation of a private dock interferes with the rights of others to use the right of way to access the lake.

The court declares that the Cushman's installation of a dock with equal rights of use to all lot owners does not exceed the scope of their easement rights and benefits. It benefits the easement rights of all lot owners. The installation of such a dock does not burden the rights of any owner.

The court further declares that any assertion of any private rights to the dock, any use of the dock that displaces the use by any other lot owner, and any other use that limits the free and fair use by all would exceed the scope of the easement and overburden the rights of others. Permitted uses do not include any use that favours the Cushmans' own use of the dock over any other owner, or any use, by its nature, that displaces or limits equal use by any other owners. Prohibited uses would include, but are not limited to, storage of personal property or watercraft either on the dock or tied to the dock for any time other than while in actual use.

Entry is. Final Judgment entered.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).

DATE: 9/14/12

Thomas R. McKeon
Justice, Maine Superior Court

7

STATE OF MAINE
CUMBERLAND, ss.

JOANNE STINSON *et. al.*

v.

GREGORY CUSHMAN *et al*

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. ~~CV-20-472~~
RE-18-013

FURTHER FINDINGS OF FACT-
PHASE I

The Plaintiffs ask the court for further findings of fact and to alter or amend the judgment. The request for further findings of fact is granted in part and is otherwise denied. The request to alter or amend the judgment is denied.

## A. Motion for Further Findings of Fact.

When a party files a motion for further findings of fact under M.R. Civ. P. 52(b), "the trial court must ensure that the judgment is supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision." *Seymour v. Seymour*, 2021 ME 60, ¶ 23.

> The purpose of motions for findings of additional facts pursuant to M.R. Civ. P. 52(b) is to seek specific fact-findings to support conclusions not already addressed by facts found in the court's opinion. Such motions should concisely indicate the conclusions on which additional fact-finding is desired and, in best practice, suggest particular facts to be found that are supported by the record and are relevant to the conclusion at issue.
> Once the court has found the facts, it is not required to explain the rationale used to support each finding of fact or conclusion of law. Requests for additional fact-findings pursuant to M.R. Civ. P. 52(b) should not be used to attempt to require the court to explain its reasoning in reaching a particular result or to reargue points that were contested at trial and have been resolved by the court's decision.

*Wandishin v. Wandishin*, 2009 ME 73, ¶¶18-19 (citations omitted).

1

REC'D CUMB CLERKS OFC
SEP 14 '22 PM 2:04

The court finds that the court's findings of fact support the court's judgment, are supported by the record, and should be sufficient to inform the parties and the Court on appeal of the basis of this court's decision.

In addition, the court has reviewed the Plaintiffs' proposed findings of fact. The court first supplements its initial findings of fact as follows.

1. All of the facts contained in the parties' Joint Facts Stipulated for Trial are adopted by the court and incorporated in its findings of fact.

2. The court finds that all of the stipulated exhibits are authentic, that each exhibit is what it purports to be, and that the language in each exhibit speaks for itself.

3. Addressing proposed facts ## 1 and 2, The court agrees that the issue in dispute was whether the parties' rights to and interest in Lot 33A. Although evidence regarding both the rights of other parties to Lot 33A and the use of the other A lots informed the court when deciding the issues in dispute, the rights of those who were not parties to the case and determination of the uses of the other A lots were not before the court.

The court declines to adopt any additional proposed findings of fact.

### B. Motion to Alter or Amend the Judgment

The Plaintiffs ask the court to alter or amend its judgment.

> A court may... alter or amend its judgment when convinced it was erroneous, and substitute the proper judgment in its place." *Most v. Most*, 477 A.2d 250, 258 (Me. 1984). When doing so, a court "is not free to litigate anew ... [and] may only re-examine those facts already presented to determine whether an error of law or fact has taken place and whether substantial justice has been rendered." *Id.* at 260; *see Perez v. Lorraine Enters.*, 769 F.3d 23, 32 (1st Cir. 2014) (stating that Fed. R. Civ. P. 59(e) "does not permit a party to turn back the clock, erase the record, and try to reinvent its case after an adverse judgment has entered").

*U.S. Bank Nat'l Ass'n v. Manning*, 2020 ME 42, ¶ 35. Nothing in the Plaintiffs' motion has caused

2

the court to determine that its carefully considered decision is erroneous. Therefore, the court denies the motion.

The entry is:

Plaintiff's Motion for Further Findings of Facts is granted in part as described in the Order. All other relief sought in Plaintiffs' motion is DENIED.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).


DATE: 9/14/22

Thomas R. McKeon
Justice, Maine Superior Court

3

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-2018-13

JOANNE STINSON, BETH CORMIER,
NANCY COBB AND JERRY COBB

    Plaintiffs & Intervenors,

    v.

GREGORY CUSHMAN AND JENNIFER
CUSHMAN

    Defendants and Counterclaim Plaintiffs,

    v.

STUART PERLMUTTER AND MITZI
PERLMUTTER

    Counterclaim Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

PARTIAL JUDGMENT

REC'D CUMB CLERKS OFC
JAN 10 '22 AM8:35

This order resolves Phase I of this case and conclusively determine who amongst the parties has the rights to use and who has title to a strip of land labelled "33A" ("Lot 33A") on the Crescent Lake Terrace Subdivision ("Subdivision"). Phase II, which remains to be decided, includes the scope of the right to use Lot 33A and whether the Defendants use overburdens that scope.

On Friday, December 3rd, 2021, the parties submitted proposed findings of fact and conclusions of law to this court for consideration. On December 6th, 2021, a hearing was held in the Cumberland County Superior Court aimed at resolving the first stage of this bifurcated proceeding.

1

## PROCEDURAL BACKGROUND

The parties to this case are Joanne Stinson and Beth Cormier (collectively "Plaintiffs"), Gregory Cushman and Jennifer Cushman (collectively "Cushmans" or "Defendants"), Intervenors Nancy Cobb and Jerry Cobb (collectively "Cobbs") and counterclaim-defendants Stuart Perlmutter and Mitzi Perlmutter (collectively "Perlmutters").

The Plaintiffs filed a five count complaint in Cumberland County Superior Court on January 19th, 2018. Count I of their complaint seeks a declaratory judgment that the Cushmans have no easement rights over Lot 33A. Count II seeks a judgment declaring that the Cushmans have no right to place a dock at the end of Lot 33A and to enjoin them from placing a dock there. Count III seeks a judgment holding that the Cushmans have no fee interest in Lot 33A. Count IV seeks a judgment declaring the Cushmans in interference with the Plaintiffs easement rights. Count V seeks a judgment that Lot 33A is owned to its center line by the respective abutters on either side of the parcel.

The Cushmans have brought a four count counterclaim against the Plaintiffs. Count I seeks a judgment declaring that their lot includes an easement over Lot 33A, while Counts II, III, and IV seek a judgment declaring fee ownership in Lot 33A in favor of the Cushmans. Each Count asserts a different theory as to how that fee ownership was established. The Cushmans originally named only the Plaintiffs as Counterclaim Defendants, but later also named the Perlmutters.

On May 28th, 2020, the court issued an order directing that every resident of the Subdivision receive notice of the pendency of this litigation, informing them of their rights to

2

intervene and safeguard their interests. These notices led to the intervention of the Cobbs, who own a number of lots within the subdivision, including a lot abutting Lot 33A.

The Cobb's intervened largely for the same reasons that the Plaintiffs brought their action. After intervening, the Cobbs filed a three count complaint themselves. Count I of the Cobb's complaint seeks a declaratory judgment that the Cushmans have no easement rights over Lot 33A. Count II seeks a judgment declaring that the Cushmans have interfered with their easement rights by placing a dock on the easement where Lot 33A meets the water. Count III asks for a judgment declaring that the Cushmans have no title to Lot 33A and that fee ownership has passed to the abutters, extending to the centerline of the Lot.

All of these parties, the Plaintiffs, the Defendants, the Cobbs and the Perlmutters have submitted various legal filings with this court and were represented at hearing on Monday, December 6th, 2021.

The parties sought leave of court to bifurcate this proceeding into distinct phases. Phase I — which this order concludes — is intended to establish who has rights of use over Lot 33A. Phase II is intended to establish the scope of the Cushman's easement rights, and whether placing a dock where Lot 33A meets the water overburdened the rights of others to enjoy the easement.

Against this procedural backdrop, the Court renders its decision as to Phase I which resolves Counts I, III, IV and V of the Plaintiffs' complaint, Counts I and III of the Cobb complaint, and Counts I (in part), II, III, and IV of the Counterclaim.

3

## FACTUAL FINDINGS

### I. Rights of Use Over Lot 33A

After a review of the extensive prepared record, the party's respective filings in the case, and hearing, the court finds as follows:

The Crescent Lake Development Association (the "Association" or the "Developer") was formed on August 11, 1928, with its owners being Harry P. Woodbury (48 shares of stock), Josiah D. Winship (2 shares of stock), and Byron E. Haskell (48 shares of stock). The Association's certificate of organization states that its purpose is to "buy, sell, develop or hold Real Estate of every kind and nature, and wherever situated." In 1931, the Association recorded a plan laying out a subdivision known as Crescent Lake Terrace in Raymond, Maine, bordering Crescent Lake (the "Plan").

The Plan depicts over 150 numbered lots making up the Subdivision. It also depicts several named roads, including Woodbury Avenue, Hilltop Street, and Haskell Avenue. Haskell Avenue extends from the "road from Raymond Village to Webb's Mills" on one end, to Crescent Lake on the other. Some smaller cross roads including Carl Street, Sibley Street, Bond Street, and Knight Avenue are also depicted on the Plan, as are a number of other lots off of Haskell Avenue that are left blank and unidentified.

Out of the approximately 150 lots on the Plan, the parties to this action possess an ownership interest in a number of them. The Plaintiffs are the owners of Lots 135, 136, 137, and 138 as shown on the Plan ("Plaintiffs Property"). The Cobbs are the owners of Lots 34 and 35 as shown on the Plan ("Cobb Property"), and Lots 128 and 129 as ("Cobb's back lots"). The

4

Perlmutters are the owners of Lots 32 and 33 as shown on the Plan ("Perlmutter Property"), and the Cushmans own Lots 124, 125, 126, and 127 as shown on the Plan ("Cushman Property").

One of the main amenities of residing in the Subdivision is its proximity to Crescent Lake. It is undisputed that all lot owners in the Subdivision have access to the lake via the Haskell Avenue extension that runs between Carey's Point and Lot 52A depicted on the Plan and the Crescent Lake public boat launch half a mile away. Lake access is also seemingly available via five numbered "A" lots, Lots 9A, 15A, 23A, 25A and 33A (collectively "A lots") that appear to be narrow strips of land which run between Haskell Avenue and Crescent Lake.

All five of these A Lots are approximately twenty feet in width. They appear different from the other, numbered lots on the Plan and are bounded on only three sides. There is no clearly delineated upper boundary of these lots, and they instead appear to be extensions of the Subdivision's main roadway, Haskell Avenue, down to the lake. It is undisputed that these A lots provide access to the lake, the dispute is over which lot owners enjoy the right to use them. Lot 33A is at the heart of this dispute.

Lot 33A is mostly lined by trees and is sandwiched between the Cobb Property (Lots 34 and 35) and Perlmutter Property (Lots 32 and 33). The Cushmans, Defendants in the original action, claim a right to use lot "33A" to access the shores and water of Crescent Lake. Pursuant to this claim of right, the Cushmans obtained a building permit from the Town of Raymond in 2014, to install a seasonal dock where Lot 33A meets the lake. The Plaintiffs and the Cobbs dispute the Cushmans' claim and assert that the Cushmans have no deeded right to use the lot labeled "33A" to access the shores and water of Crescent Lake.

5

Many of the deeds from the Association in the 1930s which conveyed lots within the Subdivision state: "Said lot is conveyed together with a right of way in common with others to and from said premises to the town road between Webbs Mills and East Raymond by such common ways as are or may be established by this Corporation." (E.g. Jt. Stip. Ex. 45). Certain deeds — including the deeds for the Plaintiffs' Property, the Cobbs' back lots, and the Perlmutter Property — additionally convey a right of way in common with others over certain specified numbered A lots from Haskell Avenue to the Lake.[1] (Jt. Stip. Exs. 18-23, 43, 44, 46-53.) The deeds for seven specific lots—Lots 32, 33, 128, 129, 131, 132, and 135—contain an express, deeded right of way over Lot 33A. Among these deeds are those for the Plaintiffs Property (Lot 135), the Cobb's back lots (Lots 128 and 129) and the Perlmutter Property (Lots 32 and 33).

With respect to the other A lots, the deeds out of the Association, executed between 1931 and 1935 and conveying Lots 15, 83, 84, 85, 88, and 90 all contain an express conveyance of a right of way over Lot 15A in addition to a general right of way to and from the town road over the common ways created by the Association. The deeds out of the Association, executed between 1931 and 1935, conveying Lots 23, 83, 84, 85, 88, 90, 102, 107, 108, and the Cobbs'

---

[1] For instance, the Deed to the Plaintiffs conveying them their Property states with respect to Lot 135: "Said lot is conveyed together with a right of way in common with others to and from said premises to the town road between Webbs Mills and East Raymond by such common ways as are or may be established by the Crescent Lake Development Association and a right of way in common with others ... over lot 33A as shown on said map." (Jt. Stip. Ex. 1.) Additionally, the deed conveying the Cobb back lots to the Cobbs expressly states: "Said lots are conveyed together with a right of way in common with others to and from said premises to the Town Road between East Raymond and Webb Mills by such ways as are or may be established by the Corporation and a right of way in common with others ... also over lots 23A and 33A, as shown on said map." (Jt. Stip. Ex. 18). The Deed conveying the Perlmutter Property to the Perlmutters expressly states: "Said lot is conveyed together with a right of way in common with others to and from said premises to the town road between Webbs Mills and East Raymond by such common ways as are or may be established by the Corporation, and also a right of way in common with others over lot thirty-three A (33-A) from Haskell Avenue to the Lake." (Jt. Stip. Ex. 24.)

6

back lots (Lots 128 and 129) all contain an express conveyance of a right of way over Lot 23A, in addition to a general right of way over the common ways created by the Association. The deeds out of the Association, executed in 1931 and 1935, conveying Lots 39, 131, and 132 all contain an express, specific conveyance of a right of way over Lot 25A in addition to a general right of way to and from the town road over the common ways created by the Association.

The Cushman Property was first conveyed by a Deed dated October 14, 1940 ("The Byron Deed"), in which the Association conveyed to Byron E. Haskell, an Association shareholder, sixty six "unsold lots" identified by lot number depicted on the Plan, including Lots 124, 125, 126, and 127. Outside of the Plan, the Byron Deed mentioned no allocation of any right of use over any specific A lots. After October 14th, 1940, none of the lots within the Subdivision which were conveyed either individually by Haskell or by the Association mention the use of any A lots.

The Cushmans acquired Lots 124, 125, 126, and 127 by quitclaim deed dated November 7, 2014. Like all of their predecessors in title, their deed contained no language allocating the right to use any specific A lot, including Lot 33A.

## II.    Title to Lot 33A

Lot 33A is an approximately 20-foot wide strip of land mostly lined with trees that provides access to Crescent Lake. The Perlmutters are owners of Lots 32 and 33 depicted on the Plan. The Perlmutters' Lot 33 abuts Lot 33A on its left flank. The Cobb Property consists of Lots 34 and 35. Lot 34 abuts Lot 33A on its right flank.

Prior to this action, title to Lot 33A itself has never been clearly established. In 1940, the Byron Deed conveyed Byron Haskell all the remaining, unsold lots within the subdivision. In

7

this conveyance, Byron Haskell specified approximately sixty lots that had yet to be conveyed out of the Association — Lot 33A was not one of them. In 1946, Byron Haskell then deeded any remaining unsold lots to Bertha Haskell (the "Bertha Deed"). Bertha Haskell later conveyed some of these lots to others but never conveyed Lot 33A. Bertha Haskell died in 1965, with a sole heir named Roy N. Cummings ("Cummings"). Cummings then died in 2014, leaving his sole heir as Adrian Schreiber ("Schrieber").

After the Association's 1940 conveyance of all unsold lots to Byron Haskell, the Association ceased transacting business in 1941 but continued to exist as an inactive entity for many years after. The Association did not, prior to September 30, 1989, record a notice indicating an intent to reserve title to Lot 33-A in the Registry of Deeds pursuant to 33 M.R.S. § 469-A(2).

## DISCUSSION

There are two discrete issues which the court is asked to address in Phase I of this bifurcated proceeding. First, the court resolves what parties, if any, have rights of use over Lot 33A. Second, having concluded what usage rights the parties do have, the court is charged with determining who holds title to the Lot.

### I. Rights of Use Over Lot 33A

In Phase I of this proceeding, the Plaintiffs ask the court to hold that they — and other Subdivision lot owners who have been deeded an express right of use over Lot 33A — are the only residents of the Subdivision who may use Lot 33A to access Crescent Lake. The Defendants counter by noting that, although their Deed does not mention Lot 33A explicitly, it does incorporate the Plan, which includes Lot 33A, into the deed, giving them a right of use in

8

common with others — including the Plaintiffs — over Lot 33A. There is no dispute among the parties as to whether Lot 33A serves as a right of way which provides access to Crescent Lake. The dispute is over who may use this right of way.

Both parties claim that their respective conveyances unambiguously provide for a right of use over Lot 33A. The Plaintiffs contend that the language giving them an express right to use Lot 33A is enough to unambiguously establish a use over the Lot exclusive of others, while the Defendants claim that the incorporation of the Plan into their deed is enough to unambiguously grant them a shared right of use of Lot 33A in common with all other lot owners in the Subdivision.

Construction of a deed is a question of law. *Doyon v. Fantini*, 2020 ME 77, ¶ 7, 234 A.3d 1222 (citing *River Dale Ass'n v. Bloss*, 2006 ME 86, ¶ 6, 901 A.2d 809). The first step in any analysis of the language in a deed is to give words their general and ordinary meaning to see if they create any ambiguity. *Gravison v. Fisher*, 2016 ME 35, ¶ 37, 134 A.3d 357. Language is deemed ambiguous when it is reasonably susceptible to different interpretations. *Doyon*, 2020 ME 77, ¶ 7, 234 A.3d 1222. The language of a deed must be given its ordinary meaning, and if there is no ambiguity then the plain meaning controls. *Doyon*, 2020 ME 77, ¶ 7, 234 A.3d 1222 (citing *River Dale Ass'n*, 2006 ME 86, ¶ 6, 901 A.2d 809). If the language is ambiguous, then extrinsic evidence may be consulted to ascertain the grantor's intent. *Id.*

## A. Deeds

First, the Court looks at the language of the deed which conveyed the Plaintiffs their property. The relevant language of the conveyance of Lot 135 to the Plaintiffs states as follows:

> "Hull Law Office, LLC . . . for consideration paid, grants to Joanne Stinson and Beth Cormier . . . as joint tenants . . . a certain lot or parcel of land, with any buildings or other

improvements thereon, situated at "Crescent Lake Terrace" so-called, in the Town of Raymond, County of Cumberland, State of Maine, being Lot No. One Hundred and Thirty Five (135), as shown on a map or plan of M.W. Blanchard, C.E. sheet #3, dated June 1931 and recorded in the Cumberland County Registry of Deeds in Plan Book 20, Page 33, to which reference is hereby made for a more particular description . . . said lot is conveyed together with a right of way in common with others . . . over Lot 33A as shown on [the Plan]."

The grant of an express easement over Lot 33A is consistent throughout the Plaintiffs' chain of title and appears in the 1939 deed by which the Association first conveys the Plaintiffs' lot. This language is also the same as or similar to the language in the deeds for other lots which also grant an express right of use over Lot 33A. The deed to the Cobb's back lots and the deed to the Perlmutter Property all contain the same, or substantially the same, language. Both the Plaintiffs and the Cobbs contend that this language excludes the Cushmans from using Lot 33A for access to Crescent Lake.

The language of the deed which conveyed Lots 124, 125, 126 and 127 to the Cushmans states, in relevant part:

"MGM Builders, Inc. . . . for consideration paid, grants to Gregory S. Cushman and Jennifer S. Cushman of Gorham . . . as joint tenants and not as tenants in common . . . a certain lot or parcel of land situated on Haskell Avenue in the Town of Raymond, County of Cumberland and State of Maine . . . said parcel may be further described at lots 124, 125, 126 and 127 as shown on plan entitled "sheet 3 of Crescent Lake Terrace, Raymond, Maine.""

The Cushmans contend that because the language of their Deed specifically incorporates the Plan, it incorporates use of Lot 33A for access to the lake. Specifically, they ask the court to decide that Lot 33A is a common way within the Subdivision that benefits any lots whose deed incorporates the Plan—including the Plaintiffs and the Cobbs.

### B. Ambiguity

The conveying language used in both parties' chains of title—with respect to Lot 33A—is ambiguous in two ways. First, both deeds reference the Plan and the Plan itself is subject to

10

different reasonable interpretations. The Plan could support a conclusion that all the A lots are rights of way enjoyed by everyone, while it could also support a conclusion that the use of A lots is restricted to those individuals whose deeds grant an express right of use over them. Moreover, the Plan's labeling of the A lots is also ambiguous. This labeling could suggest that the A lots were meant to be rights of way, or that they were meant to serve a different purpose. These different—but reasonable—interpretations of the Plan create enough ambiguity to get to the next level of analysis.

Second, the language purportedly conveying an express right of use over Lot 33A in the Plaintiffs' chain of title is also ambiguous. The Plaintiffs argue that the express allocation of a right of way over Lot 33A in their deed expresses an intent that only those with similar allocations enjoy use of that right of way. That is a reasonable interpretation. On the other hand, their deed indicates that right is given "in common with others." Nothing in the Plaintiffs' deed specifically limits the use of Lot 33A to those with specific grants. There is nothing in the deed that restricts a common grantor from changing his intent or methods of allocating rights in the A lots. Specifically, there is also no language barring a developer from subsequently granting changing course and granting blanket rights to all lot owners by mere reference to the Plan. Therefore, the easement grant in the Plaintiffs deed is also ambiguous, at least with respect to who shares their rights to use Lot 33A.

### C. Analysis of the ambiguous deeds in light of all the evidence.

Because the court considers the deeds and the Plan to be ambiguous, the court looks to extrinsic evidence to aid in its interpretation of each. Here, the extrinsic evidence available includes a number of additional conveyances outside the parties' chains of title, and any other

11

jointly stipulated exhibits and facts entered into evidence. The parties submitted no testimonial evidence as to the developer's intent.

First, the court analyzes the Plan's incorporation into each of the respective deeds to determine what effect that incorporation has with regard to Lot 33A. When a deed distinctly refers to a plan, the plan is incorporated into that deed by reference. *Gravison v. Fisher*, 2016 ME 35, ¶ 37, 134 A.3d 357 (citing *Sleeper v. Loring*, 2013 ME 112, ¶ 13, 83 A.3d 769). The Plan is then interpreted pursuant to the same rules that govern construction of the deed. *Chelsey v. Holmes*, 40 Me. 536, 546, (1855).

"When the owner of land . . . divides it into streets and building lots, and makes a plan of the land thus divided, and then sells one or more of the lots, by reference to the plan, he thereby annexes to each lot sold, a right of way in the streets, which neither he nor his successors in title can afterwards interrupt or destroy." *Gravison*, 2016 ME 35, ¶ 44 n.8, 134 A.3d 357 (quoting *Bartlett v, Bangor*, 67 Me. 460, 464-465 (1878)). Easement rights are implied by reference to a plan to secure to the grantee and subsequent purchasers of property shown on the plan "those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated." *Arnold v. Boulay*, 147 Me. 116, 121, 83 A.2d 574 (1951).

In interpreting the Plan, the *Gravison* case is particularly instructive. In *Gravison*, the Law Court was charged with interpreting whether a non-uniform, seemingly hand drawn dotted line around the perimeter of a subdivision plan was an easement that could be used by all subdivision residents whose deed incorporated the relevant plan. *Gravison*, 2016 ME 35, ¶¶ 35-39, 134 A.3d 357. The Law Court found no error in the trial court's determination that the dotted line was a right of way that was granted "for purposes that appear to be recreational and

12

that are tied to the appeal of the land, which is its proximity to the water." *Id.* ¶ 48. The Court then affirmed the trial court's holding that the incorporation of the subdivision plan into three of the defendants' deeds granted them a right of way in the perimeter path. *Id.*

Given the Lot 33A's clear status as a right of way on the Plan, the lack of any mention of any scheme to continue to allocate rights of way after 1939, and the ambiguity of the deeds making reference to specific A lots, the court finds it is more likely than not that the Association intended that the those in the Cushman chain of title enjoyed easement rights over all of the A lots. The court comes to this conclusion for severa; reasons.

First, the Plan depicts approximately 150 numbered subdivision lots, six unlabeled lots, and three lots which contain the name of the Association's shareholders. As has been referenced, the Plan also contains five A lots — of which 33A is one. Lot 33A, as with other A lots, extends directly down from the Subdivision's main roadway, Haskell Avenue, to the water. Each A lot is bounded on two sides by abutting lots, on a third side by Crescent Lake and is left unbounded on its fourth side at Haskell Avenue. The court is persuaded that, without any evidence to the contrary, the reference to the Plan and the Plan's depiction of the A lots as rights of way indicates that the grantor's intent was to grant rights of way across the A lots.

Second, nothing in the Plaintiffs' deeds limits the Developer's right to further convey easement rights to the A lots to other owners by any means. The Developer could have continued to allocate specific rights of use over A lots, but instead chose not to make those allocations in the 1940 conveyance or any other later conveyance. Nothing in those conveyances expressed any intent to limit access to the A lots, which are plainly depicted as rights of way on the Plan.

13

Third, Lot 33A seems to exist "for purposes that appear to be recreational and that are tied to the appeal of the land, which is its proximity to the water." *Gravison*, 2016 ME 35, ¶ 48, 134 A.3d 357. This is confirmed by the various deeds in the record that refer to the A lots as being "conveyed in common with others . . . from Haskell Avenue to the lake." Finding Lot 33A to be anything other than a common, recreational right of way that the various lot owners in the Subdivision can use to access the lake would restrict one of the main amenities offered to Subdivision residents and one of the main attractions of purchasing lots within it. The relatively well spaced A lots within the Subdivision were likely intended to provide various areas of the subdivision with access to the water that would be hard to come by otherwise.

Fourth, there are a variety of methods the developer could have used to allocate the rights to use each A lot. The developer did not note any such scheme on the plan or explain it clearly in any deed. The inference in the Cushman deed that it comes with the right to use the rights of way depicted on the plan is a clearer expression of the developer's intent at the time of the conveyance of those lots. This expression outweighs a vaguely stated, possible, plan to allocate use of the A lots with some of the early deeds.

Fifth, if the court was to apply what may have been the developer's short-lived attempt at differentiating among rights to use A lots, it would lead to an absurd result. *See Wells v. Powers*, 2005 ME 62, ¶ 3, 873 A.2d 361 (noting that the courts must avoid interpretations that would create "absurd results" manifestly inconsistent with the intentions of the parties.) If only those 1930s conveyances which gave certain grantees rights of use over A lots controlled access to the lakefront through those parcels, only eighteen out of the original 150 or so lots in the subdivision would be able to utilize them for access to the water. Analyzing the lots with deed references to

14

specific A lots reveals a limited array of lots, in an odd configuration, which would be permitted

access to each A lot. Given the layout of the A lots as depicted on the plan, the court cannot

reconcile that result with this Plan.

In sum, the court appreciates the Plaintiffs arguments and the possibility the Association

intended to restrict the rights to lot 33A at the time their property was first conveyed in 1939.

The weight of the evidence, however, is that the common grantor did not intend to bar the

Cushman lots from the use of Lot 33A, which is depicted on the Plan as a right of way to be used

in common with others.

## II. Title to Lot 33A

Having determined that Lot 33A is a common way within the Subdivision which may be

used by all Subdivision residents for access to the Lake, the court's next inquiry in this phase is

who has title to the contested Lot 33A. To answer this question, the court turns to Maine law

concerning common, unaccepted ways.

*1. Title by Operation of 33 M.R.S. § 469(A)*

33 M.R.S. § 469-A[2] was enacted as part of the Paper Streets Act in 1987 which was

meant to "clarify title to old, proposed, unaccepted streets shown on subdivision plans, and to

---

[2] The relevant provisions of 33 M.R.S. § 469-A are as follows:

**1. Reservation of title.** Any conveyance made before September 29, 1987 that conveyed land abutting upon a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds is deemed to have conveyed all of the grantor's interest in the portion of the way that abuts the land conveyed, unless the grantor expressly reserved the grantor's title to the way by a specific reference to this reservation in the conveyance of the land.

**2. Intent to reserve.** Any grantor who, before September 29, 1987, conveyed land abutting a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds with the intent to reserve title to the way, but who did not expressly reserve title to the way as required in subsection 1, or any person who claims title to the way by, through or under the grantor, may preserve the grantor's claim by recording

15

eliminate the possibility of ancient claims." *Brooks v. Carson*, 2012 ME 97, ¶ 19, 48 A.3d 224.

Section 469-A is not limited to "paper streets," it applies to "proposed, unaccepted way[s]." 33

M.R.S. § 469-A. "We have defined the term "proposed, unaccepted way," and have made clear

that it is not equivalent to a "paper street."" *Tisdale v. Buch*, 2013 ME 95, ¶ 11, 81 A.3d 377

(applying the statute to a 20 foot right of way for the purposes of lake access).

A proposed, unaccepted way is one that is laid out in a subdivision plan and recorded in

the registry of deeds but remains unclaimed by any lots within that subdivision or the

municipality within which the subdivision sits. *Fournier v. Elliott*, 2009 ME 25, ¶ 14, 966 A.2d

410. If the grantor or his successors fail to reserve title in the unaccepted way as set forth in 33

M.R.S. § 469-A, the abutting landowners are deemed to own to the centerline of the portion of

the way abutting their property. *Tisdale*, 2013 ME 95, ¶ 9, 81 A.3d 377.

The two parties who own the parcels which abut Lot 33A have the burden of establishing

their title to the midline of Lot 33A. To do so, they first must establish (1) that Lot 33A is a

proposed, unaccepted way, and (2) that no notice was filed with the registry of deeds intending to

reserve title to Lot 33A. Having determined, *supra* at 16, that all lot owners in the Subdivision

may use Lot 33A as a right of way to access Crescent Lake from Haskell Avenue, a conclusion

---

the notice set forth in subsection 3, in the registry of deeds where the pertinent subdivision plan is recorded, within 2 years after September 29, 1987. . . .

**6.** Lack of reservation. Any person owning land in this State abutting a proposed, unaccepted way or portion of a proposed, unaccepted way, whose predecessors in title had not reserved title in the way under subsection 1 or 2, is deemed to own to the center line of the way or portion of the way, except for a proposed, unaccepted way under subsection 6-A. . . .

**8.** Construction of laws. Nothing contained in this section may be construed to extend the period for the bringing of an action or for the doing of any other required act under any statute of limitations.

This section shall be liberally construed to affect the legislative purpose of clarifying the title to land underlying proposed, unaccepted ways by eliminating the possibility of ancient claims.

16

that Lot 33A constitutes a common, unaccepted way within the meaning of Section 469-A necessarily follows. There is no dispute that the way is unaccepted. Thus, Lot 33A is a common, unaccepted way within the Subdivision.

With respect to the second element, the court has been presented with no evidence that a grantor filed a notice intending to reserve title in Lot 33A with the registry of deeds prior to September 30th, 1989. Accordingly, no party has adequately reserved title to Lot 33A.

Thus, pursuant to 33 M.R.S. § 469-A, title to Lot 33A is held to the midline of the Lot by the owners of the abutting parcels. Those parcels are Lot 33, owned by the Perlmutters and Lot 34, owned by the Cobbs. The Perlmutters therefore have title in Lot 33A from the boundary Lot 33 shares with Lot 33A to the midline of Lot 33A. The Cobbs have title in Lot 33A from 33A's midline to Lot 33A and Lot 34's shared boundary. Of course, their title is subject to any rights of way that the developer has granted over Lot 33A.

Given that title has reverted to the abutters, the Cushmans cannot have acquired title by virtue of Adrian Schreiber's quitclaim deed or any effort to obtain corporate control of the Association. [3]   Therefore, the Cushmans failed to obtain title to Lot 33A.

_____

[3] Even if the Cushmans' claim to title of the property survives the court's application of the Paper Streets Act, the Cushmans' title claims would still fail. In their four count counterclaim, the Cushmans advance a number of theories claiming fee ownership in Lot 33A. They first claim that they obtained title to Lot 33A via quitclaim deed provided by Adrian Schrieber ("Schrieber") who had an ownership interest in Lot 33A either directly via the deed from Byron Haskell to Bertha Haskell, or via the devise of Association shares that passed to Byron Haskell after the Association's dissolution. The court is unpersuaded by these particular claims to title. There is no evidence that the deed from Byron to Bertha Haskell conveyed any ownership interest in Lot 33A and no record evidence that the Association ever formally dissolved. Thus, the court is not convinced Schrieber had any ownership interest in Lot 33A at the time he executed a quitclaim deed to the Cushmans. *See Butler v. Taylor,* 86 Me. 17, 29 A. 923, 924 (1893) ("A deed of mere release or quitclaim, without proof of possession at the time by the grantor . . . is not sufficient to prove [fee ownership].")

In the alternative, the Cushmans claim they received title to Lot 33A via a stock assignment from Schrieber because, in the event that the Association is still operational, Byron Haskell's ownership shares passed to him via testamentary instrument. This claim to title is equally unavailing. The record before this court contains no evidence that the forty eight shares originally held in the Association by Byron Haskell passed via succession to Schrieber. There is no testamentary instrument in the record which can substantiate the Cushmans claims. Moreover, the fact that Byron Haskell was a shareholder of the corporation does not establish that his forty eight shares conveyed any

17

## III. Conclusion

The court determines that the Cushmans' enjoy a right of way across Lot 33A. Additionally, title to Lot 33A is vested in the Perlmutters and the Cobbs from the boundary of their respective parcels abutting Lot 33A to Lot 33A's midline.

This order concludes Phase I of this bifurcated proceeding. The case now shifts to Phase II of this proceeding which is intended to determine the scope of the Cushman's easement rights on Lot 33A and whether the Cushman's exceeded this scope by placing a dock for personal use where Lot 33A meets the lake. The parties will inform the court of how many days of hearing are necessary to decide Phase II. The clerk shall place the matter on the court's next civil bench trial list.

Entry of judgment is as follows:

### On the Plaintiffs' complaint:

Judgment on Count I of Plaintiffs' complaint is entered in favor of the Defendants. The Court declares that the Cushmans are benefited by a right of way, in common with others, over Lot 33A for access to Crescent Lake. Whether the scope of that right of way includes the right to install a dock remains to be adjudicated in phase II.

Judgment on Count II is reserved for Phase II.

Judgment on Count III of Plaintiffs' complaint is entered in favor of the Plaintiffs. The court declares that the Cushmans have no fee interest in Lot 33A.

Count IV is dismissed as moot.

---

ownership interest in the Subdivision lots themselves. *See, e.g., Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

18

Judgment on Count V of the Plaintiffs' complaint is entered in favor of the Plaintiffs. The court declares that the abutting lots have title ownership to the midline of Lot 33A.

**On the Intervenors's claims:**

Judgment on Count I of the Intervenors complaint is entered in favor of the Defendants. The court declares that the Cushmans are benefited by a right of way, in common with others, over Lot 33A for access to Crescent Lake. Whether the scope of that right of way includes the right to install a dock remains to be adjudicated in phase II.

Judgment on Count II is reserved for Phase II.

Judgment on Count III of the Intervenor's complaint is entered in favor of the Intervenors. The court declares that the Cushmans do not have title to Lot 33A.

**On the Defendants' counterclaim:**

Judgment on Count I of their counterclaim is entered, in part, in favor of the Defendants. The court declares that the Cushmans' lots are benefited by a right of way, in common with others, over Lot 33A for access to Crescent Lake. Whether the scope of that right of way includes the right to use the right of way to install a dock remains to be adjudicated in Phase II.

Judgment on Count II of the Defendants' counterclaim is entered in favor of the Plaintiffs, the Intervenors, and the Counterclaim Defendants. The court declares that the Cushmans do not have title to Lot 33A.

Judgment on Count III of the Defendants' counterclaim is entered in favor of the Plaintiffs, the Intervenors, and the Counterclaim Defendants. The court declares that the Cushmans do not have title to Lot 33A.

Judgment on Count IV of Defendants' counterclaim is entered in favor of the Plaintiffs, the Intervenors, and the Counterclaim Defendants. The court declares that the Cushmans do not have title to Lot 33A. or any interest in the corporation.

So Ordered.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 1/7/22

Thomas R. McKeon
Justice, Maine Superior Court